WILLIAMS *v.* STATE.

Opinion delivered November 2, 1901.

1.  CONFESSION—PROMISE OF PROTECTION—ADMISSIBILITY.—Where the
    accused confessed his guilt to the person who arrested him, under
    a promise that he would not get hurt, and within a short time
    thereafter repeated his confession before the examining court,
    it will be presumed, in the absence of evidence to the contrary,
    that the influence of the promise of protection extended to the
    subsequent confession, and rendered it inadmissible.  (Page 602.)

2 · EVIDENCE—ENTIRE CONFESSION.—Where, in a murder case, the court
    admitted proof that defendant confessed the killing, it was error
    to exclude so much of the confession as gave defendant's reasons
    for the killing.  (Page 602.)

Appeal from Mississippi Circuit Court.

FELIX G. TAYLOR, Judge.

*Appellants pro se.*

The allegation that the name of the deceased was unknown
to the grand jury was a material one, and should have been proved.
13 Ark. 718; 30 Ark. 162; 34 Ark. 720.  Proof of the killing of
the father was incompetent on a trial for killing the sister, unless
it tended to show a motive for killing the latter.  34 Ark. 370;
13 Ark. 239; 14 Ark. 555; 43 Ark. 367; 1 Bish. Cr. Prac. 628.
The whole of the alleged confession should have been admitted,
if any of it at all.  1 Greenleaf, Ev. § 201.  When a confession
is once improperly obtained, all others made thereafter are deemed
to be tainted with the same improper influence.  22 Ark. 340; 50
Ark. 312; Whart. Cr. Ev. § 650; 1 Bish. Cr. Prac. § 1239; 61
Miss. 256.

*George W. Murphy, Attorney General,* for appellee.

BUNN, C. J.  This is an indictment for the murder of a girl
named Williams, whose Christian or first name is alleged in the
indictment to have been unknown to the grand jury which found
the indictment.  (The defendant in the course of the trial intro-
duced evidence tending to prove that the Christian name was in
fact known to the grand jury.  The testimony of grand jurymen,

however, sustained the allegation of the indictment as to this, and we will not disturb the judgment on that account.) Trial and verdict of guilty, and judgment accordingly, and the defendant appeals to this court, assigning several causes for reversal.

The evidence in the case, briefly stated, is as follows: The defendant, together with his father, Charles Williams, and his sister, Ora Williams, resided in a house in Mississippi county, where they were all seen late in the afternoon of the 7th October, 1900. On that night the house was burned to the ground, and in it the bodies of Charles Williams and Ora Williams, as nearly as could be identified, were found the next morning, although burned beyond recognition, so that the identity was necessarily left to be determined much by circumstances.

The defendant, shown to be then a boy of about 15 years of age, and stupid and weak minded, from thence traveled all night and reached the residence of M. L. Sanders, in Poinsett county, about eighteen miles away. After the news of the burning had got abroad, the neighbors gathered at the scene, and discovered what they conceived to be, from circumstances, the remains of the bodies of Charles and Ora Williams, although both were burned beyond recognition. At once H. S. Sanders, a brother of M. L. Sanders, but of no relationship otherwise to the defendant, went to his brother's in Poinsett county, to carry the news to the family. He testified as follows: "I live near Wordell in Mississippi county, Arkansas. I knew old man Charles Williams, the father of the defendant, and Ora, a girl, whom the defendant is charged with killing. I knew where they lived at the time they were killed. No one lived with them except the defendant. The three lived together. The house where they lived was in Mississippi county, Arkansas. On the 8th of October last, I heard that old Charles Williams and his daughter, Ora, were murdered, and the house burned down on them the night before. The neighbors gathered around, and thought that Nelson, the defendant, had crawled off in the weeds and died. I started to Tyrona, about eighteen miles away, in Poinsett county, to notify my brother and his wife, whose wife is the sister of the defendant, of their death. When I got there I asked them, had they seen Nelson, and they said, "No." I then told them that his father and little sister, Ora, were murdered, and burned up in the house. They then called Nelson, and he came out of the next room. I arrested Nelson, and started back with him. As we went along, I said to him: 'Nelson, did

you kill your father and sister?'" At this point the defendant objected to this testimony, and the court caused the jury to retire, and in their absence the witness, continuing, said: "Nelson did not answer. I said again: 'Why don't you tell me what I asked you? Did you kill your father and sister? You tell me all about it, and I will see that you get justice, and don't get hurt. You might as well tell me, for you will have to tell it in court.' He then confessed." The court sustained the objection, and refused to allow the confession to go to the jury.

W. L. Sanders testified as follows: "I am the defendant's brother-in-law. I live in Poinsett county. The defendant came to my house the morning after the killing. I asked him how he got away from the old man. He said that he killed him." Defendant, on cross-examination of this witness, offered to prove what he said was his reason for killing his father, and, when the court refused to permit him to do so, excepted.

R. M. Parker testified: "I am a justice of the peace of Mississippi county, Arkansas, and as such held the examining trial in this case. The defendant was charged with the murder of his father, Charles Williams, and his sister, Ora Williams. I read the charge to him, and also stated to him verbally that he was charged with killing them and burning them up, and asked him if he was guilty. He replied that he was guilty. He is stupid and weak minded. The house that was burned was in Mississippi county. I was there, and saw the remains of the bodies. They were beyond recognition." Defendant excepted to the ruling of the court permitting the testimony of this witness to go to the jury.

Insanity of the defendant was not pleaded in the case, but weakness of mind, to the extent that "he had just sense enough to do whatever he was told to do," was shown, and this, of course, was proper to be shown, in order to determine the character of his confession. As argued by the attorney general, and according to the theory of the state, it may well be said that whoever killed the father killed the sister of defendant, as they were killed about the same time and in the same house, which was burned down over them, and, according to state's theory, without doubt, the house was burned to destroy the evidence of the crime; but the connection of the defendant with the crime can only be established certainly with the aid of his confession.

The court excluded the confession made to H. S. Sanders, the person who arrested the defendant and so held him when the

confession to him was made. This was proper, for the promise to the defendant that his custodian would see that he was not hurt may well have influenced the confession of such a person as the defendant is shown to have been. Then the question is also raised whether the influence of this confession was still on the defendant when he appeared in the examining court and pleaded guilty to the charge of having murdered both Charles and Ora Williams. The rule on this subject is as stated in *Love* v. *State,* 22 Ark. 340: "We are clearly of the opinion that the confessions made at Fayetteville ought to have been excluded from the jury; and for the reasons assigned by the defendant that the first confession was made under the influence of fear and the hope and promise of protection, and that such influence was presumed to continue to the time of the subsequent confessions, unless shown to have been removed, and that there was no evidence tending to show the removal of such previous influence." So it was in the case at bar. The time between his confession to H. S. Sanders and his plea of "guilty" in the examining court was only one day, at farthest. It does not appear that he was warned of the consequences of a voluntary confession of his guilt by any one, not even by the court. There does not appear to have been even a circumstance occurring within the time from which we could say that the impression made by the promise of H. S. Sanders could have been removed in the least degree from the mind of the defendant. To the same effect are the decisions in the case of *Corley* v. *State,* 50 Ark. 312, and all the authorities to which our attention has been called. The confession made in the examining court, and testified to by witness Parker on the trial, should not have been admitted.

It is objected also by the defendant that the court, having admitted the testimony of M. L. Sanders that the defendant confessed to him that he killed old man Charles Williams, should also have admitted the statements of defendant to witness giving his reasons for killing the old man, and its refusal to admit this testimony was error. In this, also, we are of the opinion that defendant's contention should be sustained. There has been much discussion among jurists as what part of a confession should be offered in evidence by the plaintiff, and what part by the defendant, and at what stage of the trial each part should be presented; but there is no difference among them on the proposition that the whole of the confession should be admitted,—at least so much

of the statement including it as is relevant. On this question, Greenleaf (Ev. vol. 1, § 218, 15th Ed.) says: "In the proof of confessions, as in the case of admissions in civil cases, the whole of what the prisoner said on the subject, at the time of making the confession, should be taken together. This rule is the dictate of reason, as well as of humanity. The prisoner is supposed to have stated a proposition respecting his own connection with the crime; but it is not reasonable to assume that the entire proposition, with all its limitations, was contained in one sentence, or in any particular number of sentences, excluding all other parts of the conversation."

In cases of this kind we can readily see that reasons, more or less plausible, may be assigned for the homicide. If so, whether the effect of such a reason would be to acquit the defendant entirely, or only to lessen the degree of his punishment, matters not, and the jury should have been permitted to consider a statement of it for what it was worth.

Other questions are presented for our consideration, but the two we have discussed are sufficient for the disposal of this case.

For the errors named, the judgment is reversed, and the cause remanded for new trial.