LONNIE B. MITCHELL *v.* CAPTAIN O. E. BISHOP SUPT.

5482                                    452 S. W. 2d 340

Opinion delivered April 6, 1970
[Rehearing denied April 27, 1970.]

*John Sizemore,* for appellant.

*Joe Purcell,* Attorney General; *Don Langston* and *Mike Wilson,* Asst. Attys. Gen., for appellee.

CARLETON HARRIS, Chief Justice. This appeal is another in the long line of court hearings relating to the conviction of Lonnie Mitchell for the crime of rape in Union County in March 1959. The original conviction was affirmed by this court in *Mitchell* v. *State,* 230 Ark. 894, 327 S. W. 2d 384. Subsequent thereto, over a period of 10 years, there have been numerous court hearings, in both federal and state courts. After a second hearing in the United States District Court for the Eastern District of Arkansas, presided over by the late Federal District Judge Gordon Young, the court finding that Mitchell's petition should be denied, appellant took a second appeal to the Eighth Circuit

Court of Appeals and argued several points for reversal.[1]

Points asserted were that, because of the methods employed in the selection of his jury, Mitchell was denied the equal protection of the laws; because of a discriminatory application of the death penalty for rape in Arkansas, Mitchell was denied equal protection and the privilege against cruel and unusual punishment; because of his admission and rape confession, Mitchell was denied due process and the privilege against self-incrimination; because of ineffective representation by his court appointed trial counsel, Mitchell was denied due process and the right to have the assistance of counsel for his defense. Finally, counsel raised the issue of Mitchell's sanity at the time of the offense and at the time of the trial.

In a comprehensive opinion, that court disposed of each of these points as being without merit, except that it disagreed with the District Court's finding that appellant had waived the question of coercion in connection with his confession by not raising the question at the state trial; it was held that, under the case of *Jackson* v. *Denno*, 378 U. S. 368 (1964), Mitchell was entitled to an independent state court determination as to the voluntariness of his confession; the case was remanded with directions that the State of Arkansas should be granted a reasonable time to afford appellant an appropriate hearing on the issue of voluntariness of his rape confession, or in the alternative, grant a new trial. In compliance therewith, a hearing on this issue was afforded Mitchell in the Union County Circuit Court on April 25, 1967. Though the appellant was present in court with his parents and attorney at the hearing, no testimony was offered, attorneys for the state and appellant agreeing to submit the matter to the trial judge on the records already made in the state and federal courts. The only evidence offered orally was a short addition to the previous testimony

---

[1] *Mitchell* v. *Stephens*, 353 F. 2d 129 (1965).

of Sheriff Bishop relating to whether Mitchell's original attorney, J. S. Thomas, visited appellant at the jail while the case was pending. The court rendered an opinion holding the confession voluntary, but we remanded the case, because it was not entirely clear from the court's findings that all of the evidence in the records before him pertaining to the voluntariness of the confession had been weighed and evaluated. We directed that the case "should be remanded to the trial court for rehearing or a reexamination and reevaluation of *all the evidence* pertaining to the voluntariness of appellant's confession."[2] In compliance therewith, the Union Circuit Court conducted a further hearing on April 18, 1969, at which time oral testimony was given by four city policemen of El Dorado and one State Policeman, all having had some connection with Mitchell's arrest or detention at the jail. No testimony was offered by appellant, or anyone in his behalf; in fact, Mitchell has never testified in any hearing held in state courts. The trial court rendered a comprehensive opinion, holding:

"* * * that the confession of Lonnie Mitchell was voluntarily made of his own free will, with knowledge and comprehension of his constitutional rights, and without coercion, duress, threat, abuse, enticement or promise of reward from any persons whatsoever, and that same is supported by evidence beyond a reasonable doubt."

From the judgment entered in accordance with this finding, Mitchell brings this appeal.

At the outset, we might commend appellant's appointed counsel for the efforts expended on behalf of their client, and the very thorough manner in which their contentions have been briefed. We say this, despite the fact that we do not agree that Mitchell's confession was obtained involuntarily. No point would be served in detailing the facts, for they have been fully

---

[2]*Mitchell* v. *Bishop*, 245 Ark. 899, 435 S. W. 2d 91.

set out in the various opinions that have been rendered in this case by the federal and state courts. Actually, it is difficult to write an opinion which does not simply repeat findings already made by these courts.

We are called upon to pass on the voluntariness of Mitchell's confession to rape, and counsel also urge that we should adopt and enforce the McNabb-Mallory Rule to further the efficient administration of criminal justice, and it is argued, for that additional reason, should reverse the trial court.

In reaching our conclusions, we particularly note the following facts, though not necessarily in the order of their importance.

First, the confession was taken by tape recorder, and there is no evidence of "breaks" in the recording occasioned by the officers' stopping the machine in order to tell Mitchell what to say. The only breaks, according to the Prosecuting Attorney, came when it was necessary to turn the record, or place a new record on the machine. The use of the tape recorder is far different from the practice that occurred years ago when the officer would write out in narrative form in his own language the confession, and then present it to the defendant for signature. It is also far different from the question and answer method, for, of course, the interrogation can be halted, if desired, after every question, and later continued (for the record) after "off the record" acts or conversation. A recording reflects the tone of voice used, the intervals between questions, whether the questions are leading, and the pauses made in the answers. Of course, we know that, generally speaking, it is much easier to ascertain the truth from hearing the spoken word than to make such a determination by reading a typewritten page. In the present instance, Mitchell's statement of events occurring on the evening of the crime, before and after, is first set out by the witness at length without any interruption from the state's attorney (which is noticeable, since appellant said Prewitt told him what to say), and

there is no indication whatsoever of any fear or coercion before, or during, the giving of the statement.

Second, appellant's attorney, J. S. Thomas, testified that he discussed the confession with appellant, explaining that, if any abusive treatment could be connected to the statement, it would help the case, but that Mitchell insisted that he had been well treated.

One of the most important facts is that appellant made no complaint of mistreatment whatsoever until after the trial was over and he had been sent to Tucker State Farm. Though Mitchell testified that Wiley Branton, a prominent and capable Negro attorney, came to see him after the trial, he (Mitchell) said that he did not tell Branton that he had been mistreated; nor did he make any assertion of mistreatment to his father.

In reviewing the record, we find no evidence of mistreatment, or any indication that the confession was involuntary, except the testimony of Mitchell himself. Of course, this testimony must be considered—and we do consider it—but in doing so, we also consider the evidence on the other side. A court, when holding a hearing, or trying a case without a jury, is generally called upon to determine, where there are conflicts in the evidence, which witnesses were telling the truth and which were not telling the truth. Needless to say, Mitchell was more interested in the result of these hearings than any other witness, as well he might be, since his freedom and life were at stake. But to take his testimony, and hold that it is true, would simply mean that we totally disregard the evidence of the Prosecuting Attorney, the Sheriff, the city officers, the State Policeman, and Mitchell's own attorney, as well as his failure to complain to the others heretofore mentioned. Not only that, but his claim of mistreatment would be accepted in the face of obviously untrue statements concerning other charges made by appellant. For instance, Mitchell testified emphatically that he did not see his attorney from the time of his arraignment until the time of trial; that Thomas never talked

with him or went to the jail to see him; that Thomas never consulted him at all about the case; that he had only spoken about three words to Thomas in his life; that Thomas did not discuss the jurors with him. We think the evidence clearly establishes that these statements were not correct, and, in fact, his own father testified that he heard Thomas when the jury was being selected inquiring about a particular juror, "What do you think about this one?"[3]

The cases of *Miranda* v. *Arizona,* 384 U. S. 436, and *Escobedo* v. *Illinois,* 378 U. S. 478, were held not to be retroactive in *Johnson* v. *New Jersey,* 384 U. S. 719, and we so held in *Gross* v. *State,* May 12, 1969, 440 S. W. 2d 543.

However, in *Davis* v. *North Carolina,* 384 U. S. 737, a case which was reversed because of a finding that Davis confessions were the "involuntary end product of coercive influences," the Supreme Court said:

"We have also held today, in *Johnson* v. *New Jersey,* 384 U. S. 719, 16 L. ed. 2d 882, 86 S. Ct. 1772, that our decision in Miranda, delineating procedures to safeguard the Fifth Amendment privilege against self-incrimination during in-custody interrogation is to be applied prospectively only. Thus the present case may not be reversed solely on the ground that warnings were not given and waiver not shown. As we pointed out in Johnson, however, the nonretroactivity of the decision in Miranda does not affect the duty of courts to consider claims that a statement was taken under circumstances which violate the standards of voluntariness which had begun to evolve long prior to our decisions in *Miranda* and *Escobedo* v. *Illinois,* 378 U. S. 478, 12 L. ed. 2d 977, 84 S. Ct. 1738 (1964)."

---

[3]Though the Circuit Court of Appeals has already passed on the question of effective assistance of counsel (Mitchell having contended to the contrary), we might mention that counsel appeared to take more than the ordinary interest in the case, though he was only counsel by appointment. Mitchell's father testified that he and Thomas met in Pine Bluff for the purpose of consulting attorney Branton, Thomas making the trip by bus.

Of course, under our own case law, there is a presumption that an in-custody confession is involuntary, and the burden is on the state to show the statement to have been voluntary, *i. e.*, freely and understandably made without hope of reward or fear of punishment. In determining whether a confession is voluntary, the court must look to the whole situation and surroundings of the accused. *Harris* v. *State*, 244 Ark. 314, 425 S. W. 2d 293, and cases cited therein.

After a thorough study of the evidence and proceedings from the time of the arrest, we are definitely of the opinion that the confession was voluntarily given; that appellant was not denied constitutional rights to a fair trial or due process of law, and we are firmly of the view that the confession was properly admitted into evidence.

The McNabb-Mallory doctrine, of course, only applies when there is federal detention. We have consistently held that our statute, Ark. Stat. Ann. § 43-601 (1947) is not mandatory but directory only. *Paschal* v. *State*, 243 Ark. 329, 420 S. W. 73, and cases cited therein. We do not agree with appellant that due process calls for McNabb-Mallory standards to be imposed by the states, and we decline counsel's suggestion that we depart from previous holdings, first rendered in *Browning* v. *State*, 206 Ark. 791, 178 S. W. 2d 77 (1944).

Affirmed.

BYRD, J., disqualified.