**Arthur Lee TAYLOR, Appellant,**

**v.**

**Harold R. SWENSON, Warden, Appellee.**

**No. 71–1365.**

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 14, 1972.

Decided April 6, 1972.

Ronald M. Sokol, Asst. Public Defender, W. D. Missouri, Kansas City, Mo., for appellant.

Kenneth R. Romines, Asst. Atty. Gen., John C. Danforth, Atty. Gen., Jefferson City, Mo., for appellee.

Before BREITENSTEIN,* Senior Circuit Judge, HEANEY and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

A jury in the Circuit Court of Jackson County, Missouri, convicted Arthur Lee Taylor, then age 17, on one count of an information which charged him with robbery, first degree, by means of a dangerous and deadly weapon. He was sentenced to imprisonment for five years. On appeal his conviction was affirmed by the Supreme Court of Missouri.[1] He then petitioned for habeas corpus in the United States District Court for the Western District of Missouri, claiming, as he had in the Missouri Supreme Court, (1) that his conviction was invalid because it was founded upon the admission of tainted identification evidence, and (2) that the State trial judge denied him Due Process by the manner in which he determined the merits of the motion to suppress this allegedly tainted evidence. A hearing was held[2] at which Taylor was represented by court-appointed counsel. The District Court (The Honorable Elmo B. Hunter) denied the application for the writ, 327 F.Supp. 1165, but issued the certificate of probable cause required by 28 U.S.C. § 2253. We must therefore review.[3] For reasons now to follow, we affirm.

According to evidence given at trial, the events which led to the conviction were these. On the morning of November 24, 1968, Taylor and another negro man robbed James Robert Frizzell, a Kansas City Transit Company bus driver, of $53 at gunpoint. The victim testified that Taylor climbed aboard his bus, cocked a revolver, and demanded money by exclaiming "give me your money, mother f———." The robbery is said to have covered two to three minutes, during which time the victim was face-to-face with his assailant. After the robbers fled on foot, Frizzell drove his bus to the nearest telephone and reported the incident to police. A few hours thereafter, Frizzell was requested to come to police headquarters for the purpose of viewing photographs of possible suspects. This he did and from among approximately 200 "mug shots" he was shown, he identified Taylor as the man with the gun.[4] That same evening Taylor was detained, arrested, and taken into custody.[5]

The evening of Taylor's arrest, but prior to the filing of formal charges against him, Frizzell again was called to the police station, this time to view a lineup. There were three negro men in the lineup. One was Taylor. He is

---

* Senior Circuit Judge, Tenth Judicial Circuit, sitting by special designation.

1. State v. Taylor, 456 S.W.2d 9 (1970).

2. The State concedes, and the District Court found, that all required procedure for State review of the conviction had been exhausted by Taylor before he sought the instant writ. See principally, Edwards v. Swenson, 429 F.2d 1291, 1292 (CA8 1970).

3. Nowakowski v. Maroney, 386 U.S. 542, 543, 87 S.Ct. 1197, 18 L.Ed.2d 282 (1967) and Gross v. Bishop, 377 F.2d 492 (CA8 1967). See Blackmun, In Forma Pauperis Appeals, 43 F.R.D. 343, 344 (1967).

4. Taylor previously had been convicted on a misdemeanor charge of malicious destruction of property. This apparently explains the presence of his photograph in the police files.

5. The record does not disclose whether the arrest was accomplished pursuant to a warrant. It appears, however, that Taylor voluntarily accompanied police to the stationhouse. R., at 126. The validity of the arrest is not challenged by the defense, but if it were, we would feel constrained to find, under McCray v. Illinois, 386 U.S. 300, 304, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967) and Brinegar v. United States, 338 U.S. 160, 175–176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949), that the police had probable cause to believe that Taylor had committed the bus robbery at the time he was arrested.

5′8½″ tall and weighs 137 pounds. He bears a scar on his forehead which extends downward at an angle by his left eye. He has a front tooth which is "filed down." The other two men were of the same general height, weight, build, and age, but neither possessed the distinguishing facial characteristics of Taylor. After seeing this lineup, Frizzell was able positively to identify Taylor as the man who earlier that same day had robbed him at gunpoint. At trial, Frizzell testified to his identification of Taylor from the photographs and in the lineup, as summarized above. He also repeated his identification of Taylor in the courtroom. There was no other evidence against Taylor which connected him with the robbery. It is undisputed that the lineup was conducted without notice to and in the absence of Taylor's yet-to-be-appointed counsel. However, the record clearly reveals that before Taylor agreed to take part in the lineup, he signed the following form:

> "I, Arthur L. Taylor, having been detained and suspected, do hereby freely waive my rights to have a/my lawyer present and request I be shown in a line-up, or otherwise, to such person or persons who can identify the individual who committed the crime in question."

## I

■ In United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), the Supreme Court held that a post-indictment lineup is a critical stage of the criminal process at which one accused of a federal crime is constitutionally entitled to the assistance of counsel. As a consequence, witnesses who now attend such a lineup held in the absence of counsel may not identify the accused *in the courtroom unless* the prosecution can show by clear and convincing proof that the courtroom identification of the accused was based upon an independent source and not upon the view of the accused at the lineup, pp. 240, 242 of 388 U.S., 87 S.Ct. 1926. In so holding, the Court specifically noted that the right

could be negated by an "intelligent waiver." P. 237 of 388 U.S., 87 S.Ct. 1926. In Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), the *Wade* principle was extended to State criminal proceedings. Additionally, the Court established a *per se* exclusionary rule as to evidence of prior out-of-court identification on the theory that such evidence is the "direct result" of the illegal lineup. Pp. 272–273 of 388 U.S., 87 S.Ct. 1951. Underpinning the constitutional rule announced in these decisions was the concern of the Court that the absence of counsel would severely limit the ability of the accused to assure, at the time of the lineup, that its conduct was fair, and that it would effectively deny the accused the opportunity to reconstruct the lineup circumstances and thus virtually eliminate his right to challenge the reliability of the identification at trial. 388 U.S., at 227, 230–232, 235–237, 87 S.Ct. 1926. Thus, the *Wade-Gilbert* rules are aimed both "at minimizing [the possibility of mistaken identification] by preventing the unfairness at the pretrial confrontation that experience has proved can occur and assuring meaningful examination of the identification witness' testimony at trial." Stovall v. Denno, 388 U.S. 293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199 (1967).

■ It now being axiomatic that a defendant in a criminal case is constitutionally entitled to have counsel present at post-indictment lineups, Taylor seizes upon the absence of counsel at his pre-information lineup as the principal ground for urging a reversal of his conviction. He argues that the State trial judge committed constitutional error (1) in the admission in evidence of his in-court identification by Frizzell, and (2) in the admission in evidence of Frizzell's testimony that he also identified Taylor at the lineup. The District Court, in agreement with the Supreme Court of Missouri, concluded that Taylor intelligently waived his right to have counsel present at the lineup and that the record conclusively established that the lineup

procedure employed in this case was not such as to deny Taylor his constitutional rights.[6] These findings of the District Court must be accepted unless Taylor can show that they are clearly erroneous.[7]

 Taylor, in support of his claim that he did not knowingly and voluntarily waive his constitutional right to counsel before taking part in the lineup, emphasizes that he was then a 17-year-old Ghetto-Negro with a limited education. This may be so. The fact remains, however, that from the face of the waiver it is clearly revealed that the police offered and he declined counsel. There is no evidence that he was ignorant, feeble-minded, illiterate, or the like, and there is no indication in the record or in either of his two appellate briefs that he could contradict the findings and testimony with respect to the waiver question through the use of witnesses or other competent proof. It is significant, too, in view of the purpose which is said to underlay the *Wade-Gilbert* doctrine, that despite the absence of counsel at the lineup, Taylor's court-appointed counsel was able vividly to reconstruct the pre-information lineup at trial and to interpose substantial defenses in connection with that procedure. The record does not disclose a single additional defense which might reasonably have been asserted on that issue. We are satisified that the material facts bearing upon the waiver issue are undisputed, except inferentially, and that they firmly indicate that waiver was made "knowingly and intelligently," without prejudice to Taylor's right to a fair trial.[8] Thus, assuming, without specifically so deciding, that Taylor was constitutionally entitled to the presence of counsel at the pre-information lineup,[9] we must conclude that the District Court properly found a waiver of that right.

 Even conceding that the *Wade-Gilbert* principle is inapplicable because of the waiver, Taylor presses for reversal on the alternative ground that independent of any right to counsel claim, a procedure of identification may be "so unnecessarily suggestive and conducive to irreparable mistaken identification" that Due Process of Law is denied when evidence of the identification is used at trial. Stovall v. Denno, at 302, 87 S.Ct. at 1972.[10] The claim that Frizzell's identification falls within this

6. The Supreme Court of Missouri also took the view that the admission of the in-court identification was not tainted by the lineup but was of independent origin. Pp. 10–11 of 456 S.W.2d.

7. Fed.Rules Civ.Proc Rule 52(a), 28 U.S. C.A. See Davis v. United States, 441 F.2d 20, 22 (CA8 1971); Kress v. United States, 411 F.2d 16, 20 (CA8 1969); Amer v. United States, 367 F.2d 803, 806 (CA8 1966); and Lipscomb v. United States, 209 F.2d 831, 834–835 (CA8 1954).

8. Carnley v. Cochran, 369 U.S. 506, 516, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962); Moore v. Michigan, 355 U.S. 155, 160–162, 78 S.Ct. 191, 2 L.Ed.2d 167 (1957); and Johnson v. Zerbst, 304 U.S. 458, 468–469, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

9. Both *Wade* and *Gilbert* involved post-indictment lineups and situations where counsel had already been appointed; in Taylor's case, the lineup was conducted before charges had been lodged against him and prior to the appointment of counsel. Although the Court indicated that it was required to "scrutinize *any* pretrial confrontation" to determine if it was a critical stage, p. 227 of 388 U.S., 87 S.Ct. 1926, it explicitly confined its focus to problems arising from post-indictment lineups only. Cf. 388 U.S., at 251, 87 S.Ct. 1926 (White, J., dissenting). Because the lineup in the present case took place before the filing of charges, and thus in the investigatory stage of the bus robbery, it could be argued that the *Wade-Gilbert* doctrine has no application here. In view of our disposition of the waiver issue, and because the question whether the *Wade-Gilbert* rule has pertinence here has not been briefed or argued, we do not think it necessary, or even appropriate, to further explore this aspect of the case.

10. See also Foster v. California, 394 U.S. 440, 442, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969) and Simmons v. United States, 390 U.S. 377, 382–386, 88 S.Ct. 967, 19 L. Ed.2d 1247 (1968). Cf. Coleman v. Alabama, 399 U.S. 1, 3, 5–6, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970).

rule "must be evaluated in light of the totality of surrounding circumstances" with the view of determining if the procedure in Taylor's case "was so unduly prejudicial as fatally to taint his conviction." Simmons v. United States, 390 U.S. at 383–384, 88 S.Ct. at 970. So measured, we are unconvinced that the identification procedures utilized in the instant case were constitutionally defective.

This record discloses no factor which would impair Frizzell's ability to make an accurate identification; to the contrary, the evidence indicates that Frizzell had an excellent opportunity to observe his assailant face-to-face for as long as three minutes during the robbery. In the photo-identification session arranged by the police shortly after the robbery, Frizzell, at a time when his memory was fresh, identified Taylor as the perpetrator from among the approximately 200 photographs he was shown. The record does not support even an inference that this session was attended by any prejudicial suggestion on the part of the police.[11] Indeed, the inference is that the police had no reason then to connect Taylor with the robbery. When initial identification was accomplished, the police that very evening arranged a lineup. Again, the immediacy of the lineup seems to us to have tended to assure accurate identification by minimizing the strain upon Frizzell's sharpness of recall. The lineup also produced a definite identification. Contrary to the tenor of Taylor's assertions here, we are unable to perceive any prejudice in either the composition of the lineup or in the atmosphere in which it was arranged and conducted. We believe, contrarily, that it is a correct conclusion that Frizzell's in-court identification did not stem from an identification procedure "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, at 384, 88 S.Ct. at 971. In very fact, the record is supportive of the conclusion reached by the Supreme Court of Missouri that Frizzell's identification was entirely based upon observations at the time of robbery and not at all induced by the conduct of the lineup. Clearly, the findings. of the District Court are not clearly erroneous.[12]

## II

Taylor was formally charged with the bus robbery on December 11, 1968. Counsel was appointed the next day. On March 31, 1969, the day trial was to commence, Taylor's counsel filed a motion to suppress the identification testimony of Frizzell. The State trial judge did not hold a separate suppression hearing. Instead, he considered the motion in the presence of the jury during the course of the trial.[13] It is clear that Taylor's counsel did not request a separate suppression hearing and that he did not make a single objection on the record to the hearing being held in the presence of the jury. The court denied the motion without opinion or findings and admitted the evidence.

On his direct appeal, Taylor argued, *inter alia*, that the trial judge erred in his determination not to conduct the suppression out of the presence of the jury. The Supreme Court of Missouri rejected this contention on the ground that "[t]he demonstrated absence of tainted circumstance precludes a finding of abuse" with respect to the trial court's manner of handling the motion. P. 11 of 456 S.W.2d. The District Court, while recognizing that "the better method in [handling] motions to suppress concerning lineup procedures is to hold a preliminary pre-trial hearing,"

---

11. Comment, Photo-Identifications, 43 New York University Law Review 1019 (1968).

12. See Utsler v. Erickson, 440 F.2d 140, 143–144 (CA8 1971); Searles v. State of Minnesota, 428 F.2d 1188, 1189–1191

(CA8 1970); and Gallagher v. United States, 406 F.2d 102, 106 (CA 8 1969).

13. The testimony of Taylor as to the details of the lineup and the arguments of counsel regarding the merits of the motion were taken by the court outside the presence of the jury. 327 F.Supp. 1165, at 1169.

concluded that "the actions of the trial judge . . . did not rise to error of a constitutional nature." The District Court noted that if there was error in this procedure, it was harmless error within the standard of Chapman v. California, 386 U.S. 18, 21–24 (1967).

Taylor seeks to raise the issue once again. We believe that the point is dismissable peremptorily for two reasons. First, the record is silent as to any objection on the part of the defense to having the merits of its eleventh-hour motion considered in the presence of the jury. The initiative is placed on the party not on the judge. Had counsel formally demonstrated with clarity and certainty his reasons for desiring a separate hearing, the trial judge likely would have accommodated the request. As the record stands, however, Taylor is poorly positioned to complain of his treatment at this late stage. Second, the trial judge *correctly found* that the disputed evidence was admissible and suitable for consideration by the jury. Thus, even if Taylor's views might be said to be supported by language in *Wade* and *Gilbert*, no useful purpose would now be served by requiring a separate hearing. Our attention is called to

nothing in the circumstances surrounding the trial indicating that Taylor's rights were prejudiced by pursuit of the procedure under attack, nor is there more than marginal support for the proposition that a hearing outside the presence of the jury should in all cases be required when identification evidence is sought to be suppressed.[14] Although we share the view expressed by the District Court that it perhaps is a better practice to hold such hearings separately, we are not persuaded that the trial judge committed constitutional error in failing so to do in this case.

### III

 We likewise reject Taylor's final contention that, even though the trial judge made a ruling on his motion to suppress, he also was entitled to specific findings of fact and conclusions of law. While we can accept the proposition that one who seeks to challenge the admissibility of identification evidence is entitled to a reliable and clear-cut determination that the evidence is free of "taint," we think it evident that the issue was reliably and properly resolved here.[15]

Affirmed.

14. Compare United States ex rel. Phipps v. Follette, 428 F.2d 912, 913 n. 1 (CA 2 1970) ; People of Territory of Guam v. Cruz, 415 F.2d 336, 337–338 (CA9 1969) ; United States v. Allison, 414 F.2d 407, 410 (CA9 1969) ; and Clemons v. United States, 133 U.S.App.D.C. 27, 408 F.2d 1230, 1237 n. 4 (1968) with United States v. Beard, 414 F.2d 1014, 1017 (CA3 1969) and United States v. McKenzie, 414 F.2d 808, 810 (CA3 1969).

15. Jackson v. Denno, 378 U.S. 368, 369, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1967), and its progeny establish the principle that a judicial ruling is first required to determine whether as a matter of federal constitutional law a confession of guilt can be deemed voluntary. The defense points to this case as precedent for its claim that the absence of detailed findings as to possible taint, waiver, and the like, is constitutional error. Although we are not entirely convinced that *Jackson* provides binding precedent for resolution of the issue at hand, we note that in Sims

v. Georgia, 385 U.S. 538, at p. 544, 87 S.Ct. 639, at p. 643, 17 L.Ed.2d 593 (1967), a case dealing with the *Jackson* problem, the Court observed "[a]lthough the judge need not make formal findings of fact or write an opinion, his conclusion that the confession is voluntary must appear from the record with unmistakable clarity." To the extent that the defense position relies on *Jackson*, it ignores the precise import of the quoted language in *Sims*, for, as we have indicated, the record clearly reveals the position of the trial judge as to the merits of the motion to suppress. We are thus unable to read Erving v. Sigler, 453 F.2d 843 (CA8 1972) ; Stidham v. Swenson, 443 F.2d 1327, 1329–1330 (CA8 1971), petition for certiorari filed 40 U.S.L.W. 3111 (U.S. August 12, 1971) ; and Parker v. Sigler, 413 F.2d 459, 462–465 (CA8 1969), vacated 396 U.S. 482, 90 S.Ct. 667, 24 L.Ed.2d 672 (1970), cited by the defense, as affording Taylor any comfort on this issue.