SAMUEL J. WATSON *v.* STATE OF ARKANSAS

CR 73-131                                          501 S.W. 2d 609

Opinion delivered December 3, 1973

*Sam Gibson*, for appellant.

*Jim Guy Tucker*, Atty. Gen., by: *O. H. Hargraves*, Dep. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Appellant contends we should reverse his conviction of robbery, asserting that there was error in the admission into evidence of his purported confession, and in the court's refusal to give his requested jury instruction relating to the voluntariness of his confession, and that the evidence was insufficient to support the verdict. We find reversible error in the admission of the alleged confession.

We have for some time been committed to an independent determination of the voluntariness of a confession based upon an examination of the entire record, whenever an attack is made upon federal constitutional grounds. *Harris* v. *State*, 244 Ark. 314, 425 S.W. 2d 293; *Mosley* v. *State*, 246 Ark. 358, 438 S.W. 2d 311; *Scott* v. *State*, 251 Ark. 918, 475 S.W. 2d 699. The question of voluntariness must be determined by looking to the whole situation and surroundings of the accused. *Dewein* v. *State*, 114 Ark. 472, 170 S.W. 582; *Boyd and Byrd* v. *State*, 230 Ark. 991, 328 S.W. 2d 122; *Mitchell* v. *Bishop*, 248 Ark. 427, 452 S.W. 2d 340. Upon our examination, the findings of the trial court are not shunned but are given considerable weight in resolving evidentiary conflicts and respectful consideration on the crucial issue. Our examination of the record leads us to the inescapable conclusion that, when the totality of the circumstances surrounding Watson at the time is viewed, the state failed to meet its burden of showing his statement was made freely and understandingly without hope of reward or fear of punishment, as we have always required for the admission into evidence of a statement made by one in custody. *Mitchell* v. *Bishop*, supra; *Boyd and Byrd* v. *State*, supra.

Among the factors to be considered in determining this issue are: the age and the intellectual strength or

weakness of the defendant, the manner in which he is questioned, the presence or absence of threats of harm or inducements in the form of promises or favor (*Dewein* v. *State,* supra; *Williams* v. *State,* 69 Ark. 599, 65 S.W. 103; *Barnes* v. *State,* 217 Ark. 244, 229 S.W. 2d 484), and the delay between the advice of constitutional rights required by *Miranda* and the giving of the confession. *Summerville* v. *State,* 253 Ark. 16, 484 S.W. 2d 85; *Scott* v. *State,* 251 Ark. 918, 475 S.W. 2d 699. Where threats of harm or promises of favor or benefit are used to wrest a confession, it may be attributed to those influences. *Brown* v. *State,* 198 Ark. 920, 132 S.W. 2d 15. In order to be admissible, a confession must be free from official inducement proceeding either from hope of gain or the torture of fear. *Bullen* v. *State,* 156 Ark. 148, 245 S.W. 493. Holding out to a simple person that she would be awarded a very light punishment, if she confessed having stolen money, has been held sufficient inducement to make her confession involuntary and its admission into evidence reversible error. *Porter* v. *State,* 206 Ark. 758, 177 S.W. 2d 408.

Viewing the testimony in the light most favorable to the state, as we must in order to give the circuit judge's holding appropriate weight, examination of the entire record discloses that:

Appellant, known as Joe Joe, was 17 years of age. His parents, who now live at Fort Smith, realized when he was in the third grade that he had a problem arising from his inability to learn. He was then sent to a Child Guidance Center for a long period of time, and was assigned to "special education" all along. He had been referred to the Arkansas Rehabilitation Services for vocational evaluation by the training school. Intelligence tests administered to young Watson revealed that he was "dull normal" and had achieved a level of third grade in spelling, 3.9 in reading and 5.7 in arithmetic. Such a person can make a living, handle money and live a semblance of a normal life. When arrested on January 4, 1973, he was attending the State Rehabilitation Center at Hot Springs. He was arrested by Hot Springs police detective Abernathy, who testified he advised Joe Joe of

his constitutional rights. He was transported from Hot Springs to Malvern by Hot Spring County deputy sheriff Lloyd Smith, who conducted most of the interrogation of appellant. He did not see either of his parents until after he had signed the confession, and he did not want to call his uncle or his grandmother, with whom he lived in Malvern.

Abernathy testified he used a standard printed form utilized by the Hot Springs Police Department in advising Watson of his rights. When asked specifically to state the rights of which he advised Watson, Abernathy replied he told Watson of his right to remain silent and that any statement made by him would be used against him in court. Abernathy then said he read the form to Watson, and as he read each item and after asking appellant if he understood, placed a check mark in a box provided on the form for that purpose, and then handed the form to Watson to read. Thereafter, he said, Watson signed the form and the officer signed a certification on the form. This form was handed to Smith when he picked up Joe Joe at the Hot Springs Police Department and Smith received an affirmative answer to his inquiry of the prisoner as to whether he had signed this form. Although Smith said he asked Joe Joe twice thereafter whether he knew his rights, there was no evidence that anyone other than Abernathy had attempted to advise Joe Joe of any of the rights not stated on the form. According to Smith, he took Joe Joe into the sheriff's office upon their arrival in Malvern, and, after asking if Watson knew his rights, said, "I don't want you to tell me no story. Tell me the truth, and we will get things over with." When Joe Joe asked "How long will I have to stay here?" Smith replied "Maybe a day or maybe two weeks. I don't know, until we are thoroughly convinced that you are guilty or not guilty." The next day Smith read the form to Watson again, and after Watson again confirmed the fact that he had signed the form, Smith asked "You want to talk to us about it or go the hard way?" and added "We are going to find out before I let you go." When Joe Joe accused Smith of trying to "pressure" him,

the officer said he replied "Come on. You are going back upstairs until you quiet down." They were on their way upstairs when Joe Joe told Smith he wanted to talk to the sheriff, saying "I want to get this over with. I want to tell him about it." Smith read the rights form to Watson again before the confession was signed. Watson's mother testified that Smith had admitted to her that he had promised to talk to the judge, with whom he had good connections, about imposing a light sentence and suspending it so Joe Joe could go back to the rehabilitation center, if Joe Joe should sign the statement. This testimony was not contradicted.

Our review of the record discloses that, in view of appellant's mentality and the statements made to him by the deputy sheriff, the advice to Watson about his constitutional rights may not have been given with sufficient clarity to enable him to understand that, if he desired, and was unable to employ a lawyer, a lawyer would be appointed before he was questioned. The form employed to advise appellant of his rights sets them out as follows:

1. Anything you say may be used against you in a court of law.

2. You have the right to use a telephone.

3. You have the right to remain silent.

4. You have the right to request a lawyer of your own choice.

5. You have the right to have your lawyer with you during questioning.

6. If you cannot afford a lawyer and want one, a lawyer will be provided for you in a court of law.

7. If you decide to answer questions now without a lawyer present, you still have the right to stop answering at any time until you talk to a lawyer.

In *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), the United States Supreme Court said:

> The circumstances surrounding in-custody interrogation can operate very quickly to overbear the will of one merely made aware of his privilege by his interrogators. Therefore, the right to have counsel present at the interrogation is indispensable to the protection of the Fifth Amendment privilege under the system we delineate today. Our aim is to assure that the individual's right to choose between silence and speech remains unfettered throughout the interrogation process.

> \* \* \*

> This does not mean, as some have suggested, that each police station must have a "station house lawyer" present at all times to advise prisoners. It does mean, however, that if police propose to interrogate a person they must make known to him that he is entitled to a lawyer and that if he cannot afford one, a lawyer will be provided for him prior to any interrogation.

The opinion also points out that the burden is clearly on the state to establish a waiver of rights.

Appellant was advised that he had a right to have a lawyer provided in a court of law, if he could not afford one and that, 'if he decided to answer questions without a lawyer present, he would have the right to stop answering at any time until he did talk to a lawyer. This can easily be construed to mean that he could stop the questioning until a lawyer had been appointed. It has been held that advice that an attorney would be appointed "at the proper time," even though a slight deviation from the *Miranda* prescription, will not negate the overall effectiveness of the warning. *Tasby* v. *U.S.,* 451 F. 2d 394 (8th Cir. 1971), certiorari denied, *Feggett* v. *U.S.,* 92 S. Ct. 1273, 405 U.S. 992, 31 L. Ed. 2d 459.

This warning is not as defective as that condemned in *Moore* v. *State,* 251 Ark. 436, 472 S.W. 2d 940, where the form relied upon contained the statement "We have no way of giving you a lawyer, but one will be appointed for you, if you wish, when and if you go to court." There the implication that a lawyer could not be appointed before the accused's case came up in a court is clear. It is not clear that the provision of an attorney in a court of law would be postponed beyond "a proper time" in this case. This situation is also quite different from that in *Reed* v. *State,* 255 Ark. 63 498 S.W. 2d 877, where it was admitted that it was only indicated to the accused that, if he did not have an attorney before he went to trial, the court could appoint one for him. Still, it remains doubtful that young Watson, with his intellectual weakness, would have understood, either before or after the coercive and inducive language used by the officer, that he had the right to ask that a lawyer be appointed for him before interrogation.

All doubts about the voluntariness of a confession must be resolved in favor of individual rights and constitutional safeguards. *Smith* v. *State,* 240 Ark. 726, 401 S.W. 2d 749. In view of Watson's limited mentality, the coercive nature of Smith's interrogation and the lack of clarity in the only advice given to Watson as to his constitutional rights, when we resolve all doubts in his favor, we are compelled to hold that the confession was involuntary, because it was obtained through duress, threats of harm, and a promise of favor or reward, condemned in such cases as *Dewein* v. *State,* supra,[1] without adequate warnings as to his constitutional rights. In so doing, we have given respectful consideration to the holding of the trial court and resolved any conflicts in the evidence in favor of that ruling.

We need not discuss appellant's other points extensively. The question of voluntariness of the statement is unlikely to arise on retrial, but it appears to us that the circuit judge's instructions, given without objection, adequately covered the matter of the consideration to be

---

[1]As explained in *Needham* v. *State,* 215 Ark. 935, 224 S.W. 2d 785, 790.

given the confession by the jury, particularly in view of the fact that no specific instruction was requested.

In view of the positive identification of Watson by the victim of the "purse-snatching" of which appellant was accused, the evidence without the confession was legally sufficient, but admission of an involuntary confession must be taken to be prejudicial and reversible error.

For the error indicated, the judgment must be reversed and the cause remanded. It is so ordered.