Robert VAULT *v.* STATE of Arkansas

CR 73-168                                    507 S.W. 2d 111

Opinion delivered April 1, 1974

*James R. Howard,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Alston Jennings, Jr,* Asst. Atty. Gen., for appellee.

CONLEY BYRD, Justice. For reversal of his second degree murder conviction, appellant Robert Vault contends among other things that the trial court erred in failing to suppress a statement allegedly made by him.

The record shows that appellant was 16 years of age at the time of his arrest. His mother employed appellant's pre-

sent lawyer to represent him. The lawyer went to the jailhouse shortly after appellant's arrest—some time around 6:00 p.m. The lawyer waited around the jail and was present through two lineups in which no witness identified appellant. Counsel asked the police to either charge or release appellant, but they refused. After the last lineup and after appellant had apparently been bedded down for the night, the lawyer left with the understanding with the police that he would be back at opening hours the next morning to secure appellant's release. When the lawyer arrived at the jail early the next morning he found that the officers had obtained a signed confession from appellant the night before within 15 to 20 minutes after counsel left the jailhouse. The officers testified that appellant on his own initiative volunteered to talk to the officers and stated that he did not want a lawyer. The officers did not attempt to contact the lawyer before taking the statement.

Appellant at the trial took the witness stand and denied that he made the statement written for him by the officers. When asked why he signed the statement he said:

"Yeah, I signed it or, you know, get hit, you know. I didn't feel like getting hit, you know, that time of the day, so I signed it."

Other evidence shows that appellant had never been in jail before.

The officers first stated that the only evidence they had connecting appellant with the homicide was the confession of an accomplice. When it was pointed out that the written confession of the accomplice did not mention the appellant, the officers then suggested that the accomplice orally told the officers that appellant was at the scene of the crime.

The only evidence presented at the trial other than that of the accomplice which connected appellant with the crime was the alleged written confession.

The decisions of other courts generally disapprove of the police practice of interviewing prisoners in the absence of their counsel. See *Mathies* v. *United States*, 374 F. 2d 312, 316

n. 3 (D.C. Cir. 1967), where, in an opinion by [then] Circuit Judge Burger, it was pointed out that "The prospective application of *Miranda* v. *State of Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), plainly will require that such interviews can be conducted only after counsel has been given an opportunity to be present." In upholding a confession in *Reinke* v. *United States,* 405 F. 2d 228 (9th Cir. 1968), the court laid much stress upon the fact that Reinke admitted that he initiated the interview. In so doing the court in *Reinke* indicated its disapproval of the practice.

We need not go so far as to hold that a confession by a prisoner in jail, who is represented by an absent attorney, can never be found to be voluntary and admissible. However, under the record here involving a 16 year old on his first arrest, we find from a totality of the evidence that the alleged confession should have been suppressed.

Appellant raises a number of other issues which we do not reach since they will not necessarily arise in a new trial nor on the same evidence.

Reversed and remanded.

FOGLEMAN and JONES, JJ., concur

JOHN A. FOGLEMAN, Justice, concurring. I could not agree to the reversal of this case if it were not for the fact that we abandoned the traditional "substantial evidence" test for review of questions of voluntariness of confessions in *Harris* v. *State,* 244 Ark. 314, 425 S.W. 2d 293, and committed ourselves to an independent determination of voluntariness, saying that we would still give considerable weight to the findings of the trial judge and respectful consideration of them on the crucial issue, so long as the independent responsibility of the appellate court to determine the question of voluntariness is not frustrated. I now confess that I do not know what this means.

In retrospect, I have serious doubts about the correctness of our decision in *Harris,* because I doubt that the authorities there cited have any bearing whatever on the extent of appellate review by state courts. In *Haynes* v. *Washington,* 373 U.S. 503, 83 S. Ct. 1336, 10 L. Ed. 2d 513,

(1963), the United States Supreme Court simply refused to be bound by state court determination of the issues. Again, in *Davis* v. *North Carolina,* 384 U.S. 737, 86 S. Ct. 1761, 16 L. Ed. 2d 895 (1966), that court, in reviewing a federal habeas corpus proceeding, merely reiterated the position previously taken by it, i.e., that it had the duty to examine the entire record and make *its* independent determination of the ultimate issue of voluntariness. I am not aware of any suggestion by that court that a state appellate court has or should have the same duty.

Be that as it may, we did not reverse the finding of voluntariness in *Harris,* and we have seldom done so thereafter. See *Mosley* v. *State,* 246 Ark. 358, 438 S.W. 2d 311; *Nash* v. *State,* 248 Ark. 323, 451 S.W. 2d 869; *Mitchell* v. *Bishop,* 248 Ark. 427, 452 S.W. 2d 340; *Johnson* v. *State,* 249 Ark. 268, 459 S.W. 2d 56. But see, *Petree* v. *State,* 248 Ark. 359, 451 S.W. 2d 461, and *Watson* v. *State,* 255 Ark. 631, 501 S.W. 2d 609. We have actually remanded cases for supplemental hearings, re-examination and re-evaluation of the evidence and more specific and definitive findings on the question by the trial judge. *Mitchell* v. *Bishop,* 245 Ark. 899, 435 S.W. 2d 91; *Johnson* v. *State,* 248 Ark. 184, 450 S.W. 2d 564. In each case, we ultimately sustained the finding of the trial court that the statements there involved were voluntary. See *Mitchell* v. *Bishop,* 248 Ark. 427, 452 S.W. 2d 340; *Johnson* v. *State,* 249 Ark. 268, 459 S.W. 2d 56.

In spite of our frequent references to the findings of the trial judge in these cases, we have carefully and sometimes deliberately avoided stating any standard for determining the appropriate weight and respect to be accorded the findings of the trial judge, who had all the witnesses before him. See *Johnson* v. *State,* 249 Ark. 268, 459 S.W. 2d 56. In one case, *Nash* v. *State,* supra (per Fogleman, J.), we acknowledged that we had given "appropriate, but not controlling, weight to the findings of the trial judge," whatever that means. In *Watson* v. *State,* supra (also per Fogleman, J.), we reversed the trial judge's holding but said that we accorded respectful consideration to his holding and resolved any conflicts in the evidence in favor of that holding.

The present case clearly illustrates the necessity for our adoption of some standard of review. Surely, the resolution of

conflicts in the evidence in favor of the trial judge's holding is not the full weight to be given them. But what standard are we applying in this case? What standard have we applied in other cases? What guidelines do appellate advocates have? Is each case to be decided on an ad hoc basis? I humbly submit that the last question would have to be answered in the affirmative on the basis of cases decided after *Harris.*

We long held that the findings of fact by a circuit judge on any question properly submitted to him would not be set aside on appeal if supported by substantial evidence. *Bank of Atkins v. Wirth,* 209 Ark. 360, 190 S.W. 2d 445; *Ward* v. *Nu-Wa Laundry Cleaners,* 205 Ark. 713, 170 S.W. 2d 381; *Matthews* v. *Clay County,* 125 Ark. 136, 188 S.W. 564; *Cady* v. *Fack,* 135 Ark. 445, 205 S.W. 819; *French* v. *State,* 187 Ark. 782, 62 S.W. 2d 976; *Beason* v. *State,* 166 Ark. 142, 265 S.W. 956; *Decker* v. *State,* 85 Ark. 64, 107 S.W. 182. We once said that when circuit courts are required by law to pass upon questions of fact, the findings are as conclusive on appeal as the verdicts of juries. *Cady* v. *Pack,* supra; *French* v. *State,* supra. The substantial evidence rule has been applied in other cases in which deciding a factual question has been essential to a determination when the proper foundation has been laid for admitting evidence. See *Ruloff* v. *State,* 142 Ark. 477, 219 S.W. 781. As recently as 1966, in *Mullins* v. *State,* 240 Ark. 608, 401 S.W. 2d 9, we applied the substantial evidence test in reviewing the determination of admissibility of a confession in a *Denno* hearing under Act 489 of 1965 [Ark. Stat. Ann. § 43-2105 (Supp. 1973)]. This decision was made subsequent to that in *Haynes* and prior to that in *Davis* by approximately two months. We have never really explained our departure from *Mullins.* I am today unaware of any real reason for not having followed *Mullins.*

Although I believe that consistency requires that we re-establish the substantial evidence rule, I insist that we should arrive at some standard other than the particular sense of justice of a minimum of four judges in a particular case. Other rules that are applied by state courts are the "clearly erroneous" rule [*People* v. *Castelli,* 7 Mich. App. 1, 151 N.W. 2d 203 (1967)]; "clearly against the preponderance of the evidence" rule [*People* v. *Carter,* 38 Ill. 2d 496, 232 N.E. 2d 692

(1967)]; the "clear abuse of discretion" rule [*People* v. *Abbott,* 156 Cal. App. 2d 601, 319 P. 2d 664 (1958)]; and the "competent evidence" rule [*State* v. *Bentley,* 1 N.C. App. 365, 161 S.E. 2d 650 (1968)].

If it is too late to return to the substantial evidence rule, then I advocate establishment of the "clearly errorneous" rule. This basis for review of a trial judge's findings of fact is specified by the Federal Rules of Civil Procedure. Rule 52 (a) provides that findings of fact made by the district judges shall not be set aside, unless clearly erroneous and requires that due regard be given to the opportunity of the trial court to judge credibility. It is often said that the rule is best enunciated in *United States* v. *U.S. Gypsum Co.,* 333 U.S. 364, 68 S. Ct. 525, 92 L. Ed. 746 (1948), where it was held that a finding is "clearly erroneous" even though there be evidence to support it, when on the entire evidence, the reviewing court is left with a definite and firm conviction that a mistake has been committed. In the Eighth Circuit, the Court of Appeals has held that a finding is "clearly erroneous" if it is clearly against the weight of the evidence. *Maple Island Farm* v. *Bitterling.* 209 F. 2d 867 (1954). As thus applied the rule differs insignificantly from our rule that we will not reverse a chancellor's finding of fact unless it is clearly against the preponderance of the evidence. Although the federal rule governs civil proceedings only it is widely applied in criminal cases in the federal courts. See *Jackson* v. *United States,* 353 F. 2d 862 (1965). What is more important to us, it affords the standard for appellate review of findings of fact in federal habeas corpus petitions in the Eighth Circuit. *Taylor* v. *Swenson,* 458 F. 2d 593 (1972). The fact the rule would be consistent both with our own approach to equity cases, giving us some familiarity with its application, and with the rules of the Eighth Circuit Court or Appeals, where federal habeas petitions from this state will be reviewed, lends strong support to the adoption of that rule.

Until we find a formula for the scope of our review, I must accept the casual abandonment of the substantial evidence ule. Otherwise, I would vote to affirm this case.

We have long been committed to the rule that the ques-

tion of voluntariness must be determined by looking to the whole situation and surroundings of the accused. See *Watson* v. *State,* supra, and cases cited. I cannot join the majority in the emphasis put upon Vault's minority and the failure to call the attorney employed by his parents. We have held that a minor is capable of making an admissible voluntary confession without the advice of his parent, guardian or other adult. *Mosley* v. *State,* 246 Ark. 358, 438 S.W. 2d 311. See also, *Patrick* v. *State,* 255 Ark. 10, 498 S.W. 2d 337. We sustained a finding that a 15- or 16-year-old defendant had knowingly and intelligently waived his right to counsel. *Jackson* v. *State,* 249 Ark. 653, 460 S.W. 2d 319. See also, *Patrick* v. *State,* supra. In *Jackson,* we said that age was only one of the important factors. We also found appropriate certain language of *People* v. *Lara,* 67 Cal. 2d 365, 62 Cal. Rptr. 586, 432 P. 2d 202 (1967), cert. denied, 392 U.S. 945, 88 S. Ct. 2303, 20 L. Ed. 2d 1407. In that case the California court rejected the idea that a minor could not waive his constitutional right to remain silent and to an attorney unless the waiver is consented to by an attorney or a parent or guardian. On the contrary, it held that a minor did not lack the capacity to make a voluntary confession without the presence or consent of counsel or other responsible adult. The admissibility of such a confession, it was said, depended upon a combination of factors, including his age, intelligence, education, experience and ability to comprehend the meaning and effect of his statement. We have also said that age and intellectual strength or weakness of a defendant, the manner in which he is questioned, the presence or absence of threats of harm or inducement and the delay between advice of constitutional rights and the giving of the confession are factors to be considered. *Watson* v. *State,* 255 Ark. 631, 501 S.W. 2d 609, (1973).

There was, beyond doubt, substantial evidence to support the trial court's finding. There was positive, credible testimony appellant sent for the officers after his attorney left in order to make his statement, and when they asked if he wanted his lawyer present he replied that this would not be necessary. This testimony was not denied. There was also positive, credible testimony that the entire procedure after the lawyer left was voluntary on Vault's part. Significantly enough, Vault did not even testify on the motion to suppress his confession.

Yet with extreme reluctance, I concur in the result reached from the totality of the existing circumstances, but would not in the absence of any of them. If the matter of appellant's youth and the failure to call his attorney were the only circumstances I could not do so.

In addition to appellant's youth and the failure to call his attorney, there are these pertinent circumstances:

No witness was able to identify Vault. The written confession of Bill Allen, the alleged accomplice did not implicate Vault, or place him at the scene of the crime. Between the time Vault's attorney left and the time the statement was given, Officer Best gained no information about Vault's involvement, except for an oral statement by Allen to Detective Joe Thomas that Allen was involved. The inference that the attorney retained for Vault by his parents had been assured that Vault would be released the following morning if he had not been charged is certainly a reasonable one. The testimony of the attorney that he had asked that Vault be released because, after two lineups, there was no proof that he was involved was really undenied.[1] The same is true of testimony that when he left he told the police that he expected Vault to be released the next morning if he had not been charged. The attorney did not take further steps to secure release by habeas corpus, not only because of the lack of ready availability of a secretary, clerk or judge at the time, but because he had assured himself that Vault would be detained in the juvenile hall, in a private cell with comfortable sleeping accommodations.

J. Fred Jones, Justice, concurring. I join with my brother Fogleman in concurring, with extreme reluctance, in the results reached by the majority from the totality of the existing circumstances in this case. Neither would I concur in the absence of any of them, and neither would I concur in the majority opinion if the matter of the appellant's youth and the failure to call his attorney were the only circumstances involved.

There is no evidence in this case that the officers applied any pressure on the appellant to make a statement to them

[1] One of the officers testified only that he did not recall such a request.

after the appellant's attorney had gone. The evidence is that the appellant sent for the officers rather than the officers sending for the appellant, and that evidence is not contradicted. There is no evidence that the appellant was not fully advised of his constitutional rights to remain silent. Certainly there is no evidence in this case that the attorney advised, or would have advised, the appellant to remain silent, or that he advised or would have advised the appellant as to what statements he should or should not make.

It is significant to me also that Vault did not testify on the motion to suppress his confession. There is no evidence as to the personal relationship between the appellant and his attorney as to what should or should not be said and done. The only evidence on this point was that the attorney was employed by the appellant's parents; that he appeared at the line-up immediately following the appellant's apprehension, and that he advised the officers he would return for the appellant the following morning.

I do not say that under no circumstances would police officers be under a duty to call an accused's attorney before taking a confession from the accused. Certainly I would say this *should be done* before police officers take the initiative in questioning an accused in an attempt to obtain a valid confession that could be used against him, but I certainly would not say that under no circumstances could the police officers accept a voluntary confession, voluntarily offered by an accused, without first notifying the accused's attorney and having him present before the accused is permitted to say what he wants to say.

The *voluntariness* of a confession is the crucial issue involved as to its admissibility in evidence, and the accused has ample protection against the admission of his confession in evidence when it *is not* completely voluntary and intelligently made.