Arvin Smith et al *v.* State

5227                                                    410 S. W. 2d 126

Opinion delivered January 9, 1967

*Danuser & Huckaba,* for appellants.

*Bruce Bennett,* Attorney General; *Fletcher Jackson,* Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Appellants were convicted of the crime of grand larceny of three hogs belonging to Billy Gene Owens in the Circuit Court of Marion County on the 16th day of April, 1966, and sentenced to one year in the penitentiary, with a recommendation that the sentence be suspended upon restitution in the amount of $500.00 and payment of court costs.

Appellants assert twelve points for reversal, some of which are interrelated. We find one of these points to justify a reversal. This is because of instructions given by the circuit judge relating to recommendations of clemency and suspension of sentence in response to inquiries by the jury. The case was closed and the jury instructed. After deliberation for a time, the jury returned to the courtroom and asked: "If we give these boys a prison sentence, can we suspend the sentence—a suspended sentence?". After advising the jury that it had the right to recommend a suspended sentence if they wished to do so, the trial judge said:

"I would have to tell you that under the law the Court is not bound exclusively or conclusively by the recommendations but I will tell you that I would certainly give grave consideration to any recommendation of the jury."

The foreman of the jury then inquired whether compensation to the boy for his hogs entered into this. After advising the jury that there was no way the jury or the court could require this, the judge added:

"I might explain to you, however, that that could be made a condition of the recommendation for leniency. In other words, the recommendation could provide for restitution as a condition of your recommendation, if you wish to make it so."

The foreman then asked: "What about the Court costs?", to which the court replied that the law provided that defendants should be responsible for the court costs if they are financially able to pay, in case of conviction. He further advised that in order to avoid any misunderstanding, in case of a conviction and suspension of sentence, if there was a sentence, one of the conditions the court would have to make would be payment of court costs.

The jury then retired, after which defendants' attorney objected to the remarks of the trial judge that the court would give grave consideration to the recommendations of the jury, contending that, in effect, the statements indicated that the court might suspend the sentence and that this might cause the jury to convict when they might otherwise not do so, but no objection was made to any other remarks.

Later the jury again returned to the courtroom and inquired about the acceptability of a form of verdict finding appellants guilty of grand larceny but fixing "0 years" punishment, with an appendage after the foreman's signature adding "$500.00 for payment of

hogs to Billy Gene Owens plus Court costs.'' The trial judge properly advised that this would not be compliance with the law for the reason that the minimum penalty was one year, but added:

> ''Of course, you can consider this answer in connection with the answer the Court gave you a while ago to the other inquiry, you can consider these two answers together.''

After the court properly refused to permit appellants' attorney to make an offer to the court in the presence of the jury, objection was made to the remarks of the trial judge as an invitation to the jury to convict the appellants and make a recommendation of a suspended sentence.

After a motion for a mistrial on other grounds, the trial judge again advised the jury:

> ''The jury is the sole judge of the facts in this case and it is in your hands to determine the guilt or innocence of these defendants, and to make any recommendations which you see fit to make.''

Thereafter the trial judge told the jury that he was not bound by the recommendations, but when advised by the foreman that this was holding up the jury, replied:

> ''Yes, the only thing I know is the jury is not willing to trust the Court.''

The appellants, after first moving for a mistrial, then objected to the trial judge's remarks and moved for a mistrial. Later the jury returned its verdict resulting in the judgment from which this appeal is taken.

This court has always zealously guarded against the possibility that any remark of the trial judge might influence a jury's verdict. The statement of a trial judge relating to the transfer of a minor convicted of feloni-

ous homicide to the reform school was held improper, even though the trial judge advised the jury that this should not influence the jury one way or the other in determining guilt or innocence. *Pittman* v. *State,* 84 Ark. 292, 105 S. W. 874. A similar instruction about the committing of women to a state farm for women has been held prejudicial for the reason that it might have influenced the jury in returning a verdict of guilty. *Mitchell* v. *State,* 155 Ark. 413, 244 S. W. 443; *Snyder* v. *State,* 155 Ark. 479, 244 S. W. 746.

While convictions have been sustained by this court where trial judges have given similar instructions to the jury because no objection was made at the time the statements were made, [See *Pendleton* v. *State,* 211 Ark. 1054, 204 S. W. 2d 559; *Filtingberger* v. *State,* 216 Ark. 754, 227 S. W. 2d 443; *Andrews* v. *State,* 225 Ark. 353 282 S. W. 2d 592] this court has held that no statement should be made by the court that might tend to lead the jury to believe a suspended sentence would be granted if requested. In the *Andrews* case this court held that statements to the jury that the trial judge believed he had thus far followed jury recommendations of clemency and that he would be glad, if they so desired, to receive such a recommendation were objectionable. Statements made by the trial judge in the present case would seem to tend even more to indicate that he would suspend a sentence based on restitution and payment of court costs if recommended.

A very similar statement by a trial judge, after instructing the jury at some length upon the right of the court to suspend the sentence in case of a verdict of guilty, that "you may safely trust to the court the right performance of whatever duty and responsibility is imposed by the legislature upon that officer, and you will make no mistake in such assumption," was held in *Bryant* v. *State,* 205 Ind. 372, 186 N. E. 322, to seem to be designed to lure or wheedle the jury past the obstacle of and to disarm the jurors of any doubts or hesitancy occasioned by the severity of the penalty in-

volved. We are aware of and accept the statement of the trial judge that his remark about the lack of trust in the court by the jury was a facetious one and made as the jurors started to file out of the room. On the other hand, we must recognize that facetious remarks by the judge presiding over the trial are not always so taken by hearers and where the liberty of accused persons is at stake the making of such remarks is to be discouraged. Facetious or not, the words of the trial judge in the background of previous statements on the subject were prejudicial to the defendants, even if heard by only part of the jurors.

Objection was also made by appellants to the trial judge's permitting the sheriff to select two jurors of his choice from the special panel of 25 provided by the jury commissioners, the regular panel having been exhausted. While this probably was not reversible error because the only objection made was that the sheriff was prejudiced because he was a prosecuting witness, and because the record does not show that defendants had exhausted their peremptory challenges when the two additional jurors were summoned or whether these jurors actually served, we deem this objection to be of sufficient importance to be considered.

The mere fact that the sheriff is a witness in the case is not necessarily an indication that he is prejudiced against a defendant and does not disqualify him from serving in the absence of a showing of actual prejudice. *Hudspeth* v. *State,* 188 Ark. 323, 67 S. W. 2d 191; *Huen* v. *State,* 196 Ark. 22, 115 S. W. 2d 860; *Ashcraft* v. *State,* 208 Ark. 1089, 189 S. W. 2d 374. No such showing was made.

Where it is not shown that appellants had exhausted their peremptory challenges and were thereby compelled to accept any juror who was not qualified and impartial, they are not in a position to complain of the method that was used. *Rogers* v. *State,* 133 Ark. 85, 201 S. W. 845; *Brock* v. *State,* 237 Ark. 73, 371 S. W. 2d 539.

Nevertheless, in the *Brock* case this court expressed its disapproval of a procedure whereby persons to be served from such a special panel were selected by the trial judge without regard to numerical order and for reasons known only to the judge himself. We hold that the language of Ark. Stat. Ann. § 39-220 (Repl. 1962) providing that "said list to be drawn in lieu of summoning bystanders" can only be construed to require that the names of those to be served be drawn by lot, as in the case of a drawn jury.

In view of the above, many of the points relied on by appellants become moot; others we deem worthy of some mention, though not well taken.

Appellants sought to avoid the effect of decisions in *Bailey* v. *State,* 215 Ark. 53, 219 S. W. 2d 424 and *Black* v. *State,* 215 Ark. 618, 222 S. W. 2d 816 (Cert. denied 338 U. S. 956, 94 L. Ed. 590, 70 Sup. Ct. 490) that failure of jury commissioners to include women on the lists of those to be summoned for jury duty is consistent with the public policy of our state and not violative of the "due process" or "equal protection" clauses of the Fourteenth Amendment to the Constitution of the United States. It is the holding in these cases that one who contends that his rights under this amendment are violated must show something more. This appellants did not attempt to do and it is difficult for us to perceive how they could. They contend that the rule announced was inapplicable because in the trial of grand larceny cases women jurors would not likely be subjected to foul language, consideration of indecent conduct, the use of filthy or loathsome words, references to intimate sex relationships and the like. They overlook the fact that jury lists are selected well in advance of court sessions without regard to the types of cases which might be heard at the time of service. Other reasons for the policy of our state in this regard would include the fact that in some trials the jurors are kept together, and that facilities for jurors of both sexes under such circumstances would in most of our counties be unavailable.

Likewise we find no merit in the contention that error was committed by the court in admitting certain testimony regarding admissions made by three of the appellants to State Police Investigator Rife and Sheriff Hickey on the basis that appellants were not advised that if they lacked money to hire a lawyer, the court would appoint one for them. Apparently they seek to come within the rule announced in *Miranda* v. *State of Arizona*, 384 U. S. 436, 16 L. Ed. 2d 694, 86 Sup. Ct. 1902, overlooking the fact that the Supreme Court of the United States has held that this decision was not applicable to cases in which trial began before the date of the decision, June 13, 1966. *Johnson* v. *New Jersey*, 384 U. S. 719, 16 L. Ed. 882, 86 Sup. Ct. 1772.

Nor were these appellants deprived of any constitutional rights under the standards set out in *Escobedo* v. *Illinois*, 378 U. S. 478, 12 L. Ed. 977, 84 Sup. Ct. 1758. Unlike Escobedo, these appellants were not in custody when the statements were made and none of them requested, or was denied, the opportunity to consult with a lawyer. On the contrary, the officers testified that each was advised of this and other constitutional rights. Testimony was heard in the absence of the jury and the court found that the statements were admissible. The objection of appellants, based on the failure of the judge to examine Sheriff Hickey, one of the officers present, on this point before Sergeant Rife, the other officer testifying, was not well taken because they did not seek to interrogate Sheriff Hickey until after the trial judge had heard the testimony presented by both sides and announced his ruling. We do not deem it necessary that the trial judge hear the testimony of every person present at the time a statement is made in order to determine admissibility of that statement. Nor do we deem it necessary that every witness who may testify about the making of statements by accused persons be examined by the court in the absence of the jury before testifying, once the voluntariness of the statement has been determined. Nor were they in the position of the appellant in *Smith* v. *State*, 240 Ark. 726, 401

S. W. 2d 749, who, after being advised of his rights, was held in jail over five months following preliminary hearing when he was told that he was in bad trouble, that he would have to come up with the pistol (apparently a murder weapon) and that he was a prime suspect. Yet no steps having been taken to provide him with counsel, he made admissions of guilt this court held inadmissible.

The testimony of Sergeant Rife about the circumstances surrounding the making of the statements was substantial evidence to support the trial court's finding that the statements were voluntary (See *Mullins* v. *State*, 20 Ark. 608, 401 S. W. 2d 9.) and that there was an intelligent waiver of the right to counsel as was the case in *Cox* v. *State*, 240 Ark. 911, 405 S. W. 2d 937.

Appellants also objected to examination of Sergeant Rife and Sheriff Hickey by the trial judge in the presence of the jury as to possible threats or promises made to these three defendants. They fail to show how they were prejudiced by this action and, no objection having been made to the examination of Sheriff Hickey, review by this court is precluded. *Adams* v. *State*, 235 Ark. 1057, 160 S. W. 2d 42; *Fields* v. *State*, 203 Ark. 986, 363 S. W. 2d 905; *Graves & Parham* v. *State*, 236 Ark. 936, 370 S. W. 2d 806; *Crabtree* v. *State*, 238 Ark. 358, 381 S. W. 2d 729.

Nor do we see how the examination of Sergeant Rife by the court resulted in any prejudice. The questions as to lack of promises or threats objected to were no more leading than those approved by this court in *New* v. *State*, 99 Ark. 142, 137 S. W. 564, where the judge asked whether certain parties seemed to be angry or offended or insulted. In that case, as in *Clubb* v. *State*, 230 Ark. 688, 326 S. W. 2d 816, the propriety of a trial judge's asking questions during examination of a witness calculated to elicit the truth concerning the subject matter was recognized.

Appellants also contended that the court should have directed a verdict of not guilty because: (1) The incriminating statements of appellants were obtained upon the understanding that the officers were only interested in securing the return of the meat of the hogs and in bringing about a settlement of a dispute between appellants and the owner of the hogs, (2) as to Burris because of there being no incriminating statement by him in evidence and no evidence other than the taking of the hogs and the return of some meat by him, and (3) because of improper questions asked by the prosecuting attorney.

We do not find evidence in the record to sustain the first of these grounds. All the testimony admitted about a ''settlement'' related to approaches or effort by appellants, their families, or their attorneys. Only one of appellants testified that the officers said they did not want to embarrass him or his family, they just wanted to get the meat back. This falls far short of showing that the incriminating statements of the three appellants should be excluded or a verdict directed.

As to Burris, the determination of the sufficiency of the evidence at the conclusion of the state's testimony is rendered unnecessary for he introducede vidence and testified himself, thus waiving that motion for a directed verdict. *Reeves* v. *State*, 222 Ark. 77, 257 S. W. 2d 278. His own testimony shows that he was present and participating in the shooting of the three hogs; that after leaving, the appellants decided to come back to get the hogs if they had not been claimed by anyone; that he helped cut up, load and divide the meat at a time late enough in the evening that lights were required; that he first denied to the officers having any knowledge of the meat; that he and some of the other boys tried to make a settlement with the owner of the hogs, and that he returned some of the meat to Sheriff Hickey.

Only one of the allegedly improper questions of the prosecuting attorney was objected to and that objection was sustained. We find his contention without merit.

It would unduly extend this already lengthy opinion to discuss other points raised by appellants. It is sufficient to say that all have been examined and found to be without merit or rendered immaterial by this decision.

Reversed and remanded for a new trial.