HAROLD SHERMAN UPTON *v.* STATE OF
ARKANSAS

5820                                    497 S.W. 2d 696

Substituted opinion on rehearing delivered
July 23, 1973

[Rehearing denied August 27, 1973.]

*Camp & Thornton, P.A.,* and *James J. Calloway,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *O. H. Hargraves,* Deputy Atty. Gen., for appellee.

GEORGE ROSE SMITH, Justice. Harold Sherman Upton, aged 28, was found guilty of murder in the first degree, committed in the perpetration of robbery, and was sentenced to imprisonment for life. His appointed counsel argue 25 points for reversal, a number of which are overlapping.

The crime occurred on December 27, 1971. Upton and his wife, according to Upton's confession, picked up the decedent, Woodrow Defee, on a highway in Union county. Within a short time Upton stopped the car and attempted to rob Defee, at gunpoint. When Defee grabbed the barrel of the gun Upton shot him twice, first in the shoulder and then in the head. The Uptons then drove on, leaving Defee's body near the highway. The police, by tracing a long-distance call that Upton made at a truck stop in Village, Arkansas, were able to identify Upton and to bring about his arrest in Louisiana.

The Uptons were arrested after having fled from the home of Upton's father, Wade Upton, in Bossier parish. Two Louisiana officers then went to Wade Upton's house, told him that his son had been arrested upon a murder charge, and explained that they were looking for the weapon used in the crime. According to the officers, Mr. Upton co-operated with them, bringing out a 12-gauge shotgun and a .410-gauge shotgun. After the officers left they learned by radio that the weapon was a 16-gauge shotgun. They returned to the Upton home, where Mr. Upton again co-operated by going to a barn and finding a green blanket, in which the guns proved to be wrapped up.

A substantial part of the appellant's brief is devoted to the contention, under several headings, that the weapons were obtained by means of an illegal search. After an extensive hearing upon a motion to suppress the evidence, the trial judge sustained the admissibility of the guns, finding that there had actually been no search. That ruling was correct. Upton's father was in possession and control of the house. According to the officers' testimony, he voluntarily produced and relinquished the weapons. The State's proof is even stronger than it was in an analogous case, where the mother of the accused freely allowed officers to have access to her house in their search for incriminating clothing. *Maxwell* v. *Stephens*, 348 F. 2d 325 (8th Cir. 1965). There the court explained its conclusion in these words: "The situation strikes us as being no different, factually, than if Mrs. Maxwell herself had brought the coat, it being properly in her possession, to the authorities." In the case at bar the trial judge was warranted in finding that just such a voluntary surrender of the shotguns took place. We perceive no invasion whatever of the appellant's rights.

At the trial counsel interposed the defense of insanity and evidently argued to the jury that at the time of the crime Upton's mind was so affected by the use of drugs that he could not form the intent to commit robbery. Instructions explaining both those defenses to the jury were given.

Dr. A. C. Smith, a psychiatrist, was called as a witness by the defendant. He testified that Upton suffered from the mildest of the five classifications of schizophrenia and might be unable to control himself under stress. On cross examination Dr. Smith was permitted to testify that he had read the report of another psychiatrist, Dr. Fraser, who stated in his report that Upton had denied having used drugs for at least a week before the alleged crime. It is now insisted that the trial court erred in allowing Dr. Smith to be questioned about the statement in Dr. Fraser's report.

That contention must be sustained. Dr. Smith testified that he did not particularly remember anything of

the contents of Dr. Fraser's report; so it cannot be fairly said that Dr. Smith relied upon it in reaching his conclusions. Hence there was no proper basis for permitting Dr. Smith to read Dr. Fraser's statement to the jury. The statement was manifestly hearsay and of course tended to rebut the defense theory that Upton was under the influence of drugs at the time of the offense. Under our settled rule that error is presumed to be prejudicial unless we can say with confidence that it was not, *Vaughn v. State,* 252 Ark. 505, 470 S.W. 2d 873 (1972), we have no choice except to sustain this contention for reversal.

With respect to the plea of insanity, we are urged to adopt a rule requiring the State to prove the accused's sanity beyond a reasonable doubt, in place of our rule that the defense must prove the accused's insanity by a preponderance of the evidence. We think our rule to be sound and therefore adhere to our earlier refusal to change it. *Kelley* v. *State,* 154 Ark. 246, 242 S.W. 572 (1922). A related argument, that the State should have been required to provide the accused, at public expense, with a private psychiatrist, was rejected in *Hale* v. *State,* 246 Ark. 989, 440 S.W. 2d 550 (1969).

The trial judge, after a *Denno* hearing, found that Upton's confession was made voluntarily, after proper warnings. We have reviewed the evidence and agree with that finding. Upton at first refused to make any statement to the officers, but later on—apparently in an effort to clear his wife of suspicion—he asked to see the prosecuting attorney. The latter, with three police officers, interviewed Upton in his jail cell, where he gave an account of the homicide, without interrogation. Two of the officers testified to the voluntary nature of the confession. No complaint is made that the other two persons present were not called to testify, nor is it shown, as it was in *Smith* v. *State,* 254 Ark. 538, 494 S.W. 2d 489 (1973), that the accused was interrogated in the absence of the witnesses who testified.

It is argued that the court should have given instructions permitting the jury to make a finding of voluntary or involuntary manslaughter. The court instructed the

jury on first and second degree murder. Since the jury found Upton guilty of first degree murder, he was not prejudiced by the court's failure to submit degrees of homicide below second degree murder. *Brown* v. *State*, 219 Ark. 647, 243 S.W. 2d 938 (1951).

We have considered the appellant's other arguments for reversal, but we find them to be without merit.

Reversed.