## Lee Edward SMITH *v.* STATE of Arkansas

5811                                                   505 S.W. 2d 504

Opinion delivered February 25, 1974

*John M. Fincher*, for appellant.

*Jim Guy Tucker*, Atty. Gen.; by: *O. H. Hargraves*, Dep. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Lee Edward Smith was found guilty of burglary of the residence of William Montague and grand larceny of two typewriters and a television set which were taken therefrom. As a basis for reversal appellant contends firstly, that "his confession should have been suppressed because it was induced by violence and, thus, was involuntary" and secondly, that the evidence to sustain the conviction was insufficient, because the evidence,

other than the challenged confession, was more exculpatory than incriminating.

Upon the basis of our decision in *Smith* v. *State*, 254 Ark. 538, 494 S.W. 2d 489, we find merit in appellant's challenge of the admissibility of the testimony. We there said:

> [Other states where the issue has been presented] have adopted a reasonable and practical approach in determining the voluntariness of a confession. They hold that all material witnesses must be called or their absence satisfactorily explained in order for the state to meet its burden of proving that a confession was voluntarily given. In *Mercer* v. *State*, 206 A. 2d 797 (Md. 1965), the appellant's conviction was reversed because his testimony that he was physically mistreated by two detectives was uncontradicted by either of the persons accused of the mistreatment. However, in *Gill* v. *State*, 289 A. 2d 575 (Md. 1972), that court held that it is not required that "each person who had casual contact with the accused, once he was in police custody or being interrogated, must testify to the voluntariness of the confession in order for the prosecution to satisfy its burden. But when it is contended that someone employed coercive tactics to obtain inculpatory statements, the charge must be rebutted." In *People* v. *Armstrong*, 282 N.W. 2d 712 (Ill. 1972), the appellant was properly advised of his constitutional rights before making a statement. A motion to suppress was sought and refused. The state failed to produce all witnesses material to the making of the statement or explain their absence. It was held that appellant's statements should have been suppressed. From that opinion:
>
> > "The burden of proving that a confession is voluntary is one which the State must assume when the admissibility of a confession is questioned on the grounds that it was coerced. Only by producing all material witnesses connected with the controverted confession can the State discharge this burden."
>
> See, also, *Stevens* v. *State*, 228 So. 2d 888 (Miss. 1969).

We hold that whenever the accused offers testimony that

his confession was induced by violence, threats, coercion, or offers of reward then the burden is upon the state to produce all material witnesses who were connected with the controverted confession or give adequate explanation for their absence.

Smith was arrested by Patrolman Vernon Wilson of the Little Rock Police Department when found in an automobile from which some of the stolen property was recovered. Vernon turned Smith over to the Detective Bureau at police headquarters. Detective Billy C. Johnson testified that he read a standard form to Smith advising him of his rights and that later, in one of the six interrogation rooms at police headquarters in a statement given to him and Officer J. H. Hale, Smith admitted the burglary and theft. The statement was a confession. On cross-examination Johnson denied striking or manhandling Smith or having observed anyone else striking or even touching him. He also denied that, immediately after the interrogation, Smith was bleeding at the ears, or that his face was puffed out, or that he had asked for a doctor. Hale did not testify.

On the other hand, Smith testified of physical abuse during interrogation. He said that when he denied burglarizing the house, one of the officers slapped him, and the other hit him on the side of his head. According to him, he was left alone for an hour before the officers returned and told him that he was going to tell them he had burglarized the house, but when he refused, they again left. He added that they then returned after an interval of 35 to 40 minutes, and, after having thrown something in his eyes, again left but returned in 15 or 20 minutes and beat him with a telephone book. According to him, his ear was then bleeding. It was then, he said, that he signed a confession. His testimony that he then requested medical aid was contradicted, but he was seen by Dr. John Wassell on a subsequent date. Unfortunately, a malfunction of mechanical recording equipment has deprived us of all the physician's testimony as a witness for appellant, but it was revealed on cross-examination that this doctor, upon seeing Smith some six days after the latter's arrest, found a ruptured eardrum which could only have been caused by a blow to the head or Smith's suddenly ascending to, or descending from, a high altitude. Smith was also cor-

roborated by suspected accomplices who were detained at the police station while he was being interrogated. One of them was his sister, who said that, after having heard the police beating Smith, she entered the interrogation room where they had been and saw that his nose and one ear were then bleeding. Bobbie Adair, who was in the automobile with Smith and others when he was arrested by police officers, testified she first heard a policeman "hollering" in the room where Smith was and then heard Smith say something like "hold it." Calvin Perry also said he heard the policeman whip Smith and heard Smith "hollering."

We cannot, and do not say, the testimony of Smith and his companions must be accorded greater weight than that of the police officer. It is clear, however, that the state did not meet its burden of proof as defined in *Smith* v. *State*, supra. No **explanation whatever was offered for the failure of officer J. H. Hale** to appear and testify. The state's evidence shows that Hale was present when Smith made the statement, and his name was signed as a witness at the end of the statement. It goes without saying that he was a material witness on the question. There is certainly evidence by and on behalf of the accused that the confession was induced by violence, threats and coercion. Consequently, there was no way the state could have met its burden of proving that the in-custody statement was voluntary, without either calling Hale as a witness or giving an adequate explanation for his absence.

Although the state does not so contend, it has been suggested in our consultation that the judgment should not be reversed on this point, because (1) the question was not properly raised in the trial court and (2) the point is not argued on appeal. We cannot subscribe to either position.

It must be kept in mind that the case was tried to the circuit judge as fact-finder, a jury trial having been waived. The record reveals that the attorney who represented Smith at the trial first objected to Johnson's reading the standard "rights form" supposed to have been signed by Smith because at the time he signed this form "he was under extreme duress and physical abuse and feared for his own safety." The attorney also asked the circuit judge to reserve his ruling until Smith had testified on the subject. The circuit judge permitted the

state to proceed. When Officer Johnson undertook to read the statement, the attorney made a general objection, and the statement was marked for identification. It was not offered into evidence until after the witness was cross-examined, when appellant's attorney again objected and asked the court to reserve its decision. The state then rested and appellant's attorney moved for dismissal on the basis that the only proof of guilt was appellant's statement which "was given under duress and supreme fear for his own welfare and life" and testimony that some of the stolen merchandise was found in the auto in which the police found Smith. Thereafter, Smith and his witnesses testified, and their testimony included that above-mentioned with reference to coercion of Smith. After the testimony was completed, appellant's motion to dismiss was renewed. This motion, based upon Smith's attorney's additional statement that the only indication of appellant's guilt was a statement which, in the attorney's opinion, was obtained through duress and threats and appellant's fear for his own safety, was denied. Appellant's attorney then introduced the testimony of Calvin Perry and renewed the motion to dismiss, arguing that the only evidence connecting Smith with the crime was the confession. He then reviewed the testimony supporting the finding that Smith had been beaten.

The defendant was not required to challenge the confession by a motion to suppress, although that would be the better procedure in a jury trial. We see no reason why the procedure followed by defendant's attorney is not sufficient, at least in a nonjury trial. Not only do we consider the objections made sufficient to put the burden of proving the voluntariness of the confession on the state, we held in the earlier *Smith* case that, whenever the accused introduced evidence of coercion, the burden of the state could only be met by calling all material witnesses or giving adequate explanation for the absence of any who did not testify. Nowhere in *Smith* does it appear that, in making an objection based upon a contention the state has failed to show a statement is involuntary, a defendant must point out, in precise words, that a material witness was not called.

Appellant stated his point for reversal thus:

The court erred in refusing to grant defendant's Motion to Dismiss and/or in refusing to direct a verdict in favor of defendant.

His argument was divided into two subdivisions. Subdivision A was thus stated:

Firstly, appellant contends his confession should have been suppressed because it was induced by violence and thus was involuntary. *Edmonson* v. *State*, 72 Ark. 585. Due process requires that a confession be voluntarily made. *Lee* v. *State*, 229 Ark. 354, cert. den. 359 US 930.

After outlining the evidence of coercion, appellant then stated:

The burden of proving that the confession was voluntary is on the prosecution and it must be proven by a preponderance of the evidence. *Lego* v. *Twomey*, 404 US 477. And a confession is presumed to be involuntary. *Mitchell* v. *Bishop*, 248 Ark. 427, cert. den. 91 S. Ct. 578; *Scott* v. *State*, 251 Ark. 918. The only evidence presented by the state to prove that the statement was voluntary was the testimony of Detective Johnson who testified that he did not touch Smith or force him in any way to sign the confession (R. 32). The signing of the confession was witnessed by Detective Sergeant J. F. Hale, but the state did not bother to call him to testify regarding the circumstances (R. 37).

Appellant submits that the state wholly failed to overcome the presumption of involuntariness of the confession and prove it voluntary by a preponderance of the evidence. The confession should therefore have been suppressed and the charge dismissed, because there was *no other evidence* to connect appellant with the crime of burglary and grand larceny.

Subdivision B then followed. It was an argument that the evidence was insufficient to support a finding of guilty because the confession was tainted and other evidence did not show guilt. These arguments cannot be said to constitute a waiver of the point which we find to constitute reversible error, except by an extremely hypertechnical appraisal in

which we should not engage. It cannot reasonably be said that appellant did not, in support of the argument in his brief that the state failed to meet its burden of proving the confession voluntary by a preponderance of the evidence, specifically point out that the state did not call Hale as a witness.

In this respect this case differs significantly from *Upton* v. *State*, 254 Ark. 664, 497 S.W. 2d 696, where no complaint was made, on appeal, that two of the four persons present at the interrogation of the accused were not called to testify. We said in *Smith* v. *State*, 241 Ark. 748, 410 S.W. 2d 126, that the state was not required to produce every witness to a confession. To the extent that this opinion might appear to permit an affirmance in this case, it was certainly limited in the subsequent case of *Smith* v. *State*, 254 Ark. 538, 494 S.W. 2d 489, to require the calling of every *material* witness on the question of voluntariness. We have never held, and we do not now hold, that the state must call every witness who had any connection, however remote and inconsequential, with the giving of an incustody statement. When that participation is significant, however, and the witness would be a "material" one, the rule of *Smith* v. *State*, 254 Ark. 538, 494 S.W. 2d 489, stands undiluted.

We cannot agree with appellant that the evidence, exclusive of the confession, was insufficient to support a conviction. Neither can we say that the state cannot either produce Hale as a witness on retrial or give an adequate explanation of his absence. Consequently, we cannot agree that the charge should have been dismissed by the trial court or that we should dismiss it.

The judgment is reversed and the cause remanded.

GEORGE ROSE SMITH, J., dissents.

GEORGE ROSE SMITH, Justice, dissenting. The majority, as I read the briefs, are reversing the trial court's judgment upon a ground that the appellant's attorney has not seen fit to argue in this court; that is, that Officer Hale was not called by the State to testify about Smith's confession.

It was in the case of *Smith* v. *State*, 254 Ark. 538, 494 S.W. 2d 489 (1973), that we first considered the possibility that the State is under a duty to call all witnesses, other than casual ones, who participated in obtaining a defendant's confession. There Smith's counsel argued the point in this court, citing cases from other jurisdictions. We found the argument convincing and adopted the rule now relied upon by the majority. It was a decided innovation in our law, for in earlier cases we had upheld dozens of confessions which were not attested by every officer who took part in the interrogation.

The *Smith* case was decided six months before this appellant's brief was filed, but counsel does not cite that case. Neither does his brief state the rule announced in *Smith*, that the State must call all participating interrogators. In fact, the proof indicating its possible applicability is mentioned only casually, in this sentence: "The signing of the confession was witnessed by Detective Sergeant J. F. Hale, but the state did not bother to call him to testify regarding the circumstances." It is hard to believe that counsel chose that sentence as a means of asserting reversible error under the rule of the *Smith* case. I have no doubt that the appellant's attorney is going to be genuinely surprised upon learning the ground upon which he has obtained a new trial.

If we could say with assurance that that new trial is going to benefit the appellant by correcting an injustice that occurred at the first trial, I would not be inclined to note my disagreement with the majority opinion. But of course that possibility is extremely remote. We have no idea what Officer Hale will say about the confession, but it is reasonable to assume that defense counsel, in preparing for the trial, interviewed the officer and found nothing favorable in his expected testimony. Thus in all probability the new trial will be a waste of time and expense, which is doubtless why the point was not argued in the appellant's brief.