David Lynn GAMMEL and Eddie SPANN *v.*
STATE of Arkansas

CR 75-92                                   531 S.W. 2d 474

Opinion delivered January 19, 1976

*Patrick D. O'Rourke,* for appellants.

*Jim Guy Tucker,* Atty. Gen., by: *Michael G. Epley,* Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Appellants Gammel and

Spann were found guilty of robbery with a firearm and sentenced to imprisonment for 25 years - 15 for robbery and 10 for the use of a firearm. We find no reversible error on the five points for reversal listed by appellants and affirm. We will discuss these points in the order they are argued by appellants.

THE TRIAL COURT ERRED BY NOT CHALLENGING FOR CAUSE A JUROR WHO EXHIBITED ACTUAL BIAS DURING VOIR DIRE, THEREBY EFFECTIVELY DENYING THE DEFENDANTS THEIR RIGHT TO A FAIR AND IMPARTIAL JURY.

Appellants challenged prospective juror Faris peremptorily when the court refused their challenge for cause, and contend that they were prejudiced because they had exhausted their peremptory challenges when the last juror was accepted, because they would have otherwise peremptorily challenged him. This juror was acquainted with one of the state's witnesses, Capt. Jim Bell of the West Memphis Police Department. When asked whether his relationship with the officer was such that he would tend to give more credence to what the officer said, Faris responded that he had known Bell to be an honest man and would tend to believe him. The circuit judge then stated that he would give an instruction on credibility of witnesses and the applicable rule on credibility and asked Faris if he would abide by that instruction and apply it to the facts. When Faris answered in the affirmative, the judge refused to allow the challenge for cause.

Either actual or implied bias is a ground for disqualification of a prospective juror. Ark. Stat. Ann. §§ 43-1919, 1920 (Repl. 1964). The determination of the existence of actual bias is a matter lying within the sound judicial discretion of the trial judge. We will not reverse the trial court's action on challenges for actual bias in the absence of an abuse of discretion. *Henslee* v. *State,* 251 Ark. 125, 471 S.W. 2d 352; *Lewis* v. *State,* 220 Ark. 914, 251 S.W. 2d 490; *Scifres* v. *State,* 228 Ark. 486, 308 S.W. 2d 815. The challenge here does not come within the scope of permissible challenges for implied bias. See Ark. Stat. Ann. § 43-1920.

In view of the statement by Faris that he would abide by and apply the court's instruction on the credibility of witnesses, we cannot say that there was an abuse of discretion in this instance.

## THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE VERDICT THAT APPELLANT GAMMEL USED A FIREARM IN THE COMMISSION OF THE ROBBERY.

Appellant Gammel points out that there was no evidence that he used a firearm in the robbery and that Danny Allen Jenkins, the manager of the Nic-Nac Grocery who was robbed, testified that Gammel did not at any time exhibit a firearm. Appellants state in their brief that there was no real evidence that a firearm was used by anyone during the robbery, but we disagree. As a matter of fact, Gammel stated in his motion for new trial that "all the proof showed that only his codefendant used a weapon and that there was no proof that [Gammel] knew or acquiesced in the use of a firearm." This concession that there was evidence to show that Spann used a firearm was fully warranted. Spann does not actually contend on this appeal that there was no evidence that he used a firearm. No useful purpose would be served by reviewing the testimony on this score.

The gist of Gammel's argument is that the enhancement of his 15 years' sentence by 10 years is invalid because there is not sufficient evidence that he used any firearm himself. This argument overlooks the impact of our law making an accessory who stands by, aids and assists in the commission of a felony a principal in the crime and punishable as such. See Ark. Stat. Ann. §§ 41-118, 119 (Repl. 1964).

Apparently we have not been called upon to decide this precise question where Ark. Stat. Ann. § 43-2336 (Supp. 1973) has been brought into play. There is some split of authority on the question. The New York rule is that one must personally use the firearm before he can be convicted of its use. *People* v. *Paradiso*, 248 N.Y. 123, 161 N.E. 443 (1928). We believe the California rule that an accomplice is just as guilty as his confederate who uses the firearm and is subject

to the same punishment is based upon sounder reason and logic[1] *People* v. *Stevens,* 32 Cal. App. 2d 666, 90 P. 2d 595 (1939). This is particularly so when appropriate consideration is given to a statute making an accessory who stands by, aids and assists in the crime *punishable* as a principal, as was the case in the state of Washington. *State* v. *Willis,* 5 Wash. App. 441, 487 P. 2d 648 (1971). Although the California court reached the same result without reliance on statutory language such as that in the Arkansas and Washington statutes, we unhesitatingly embrace the reason and result of the opinion of the Washington court in *Willis.*

## THE STATE FAILED TO SHOW BY A PREPONDERANCE OF THE EVIDENCE THAT AN IN-CUSTODY CONFESSION WAS VOLUNTARILY GIVEN THEREFORE ADMISSION OF TESTIMONY OF SUCH INVOLUNTARY CONFESSION WAS REVERSIBLE ERROR.

As a part of its evidence-in-chief, the state offered the testimony of James Newton Skaggs, Jr., a 17-year-old misdemeanant, who was serving a 30-day sentence in the West Memphis jail when Gammel was incarcerated. He testified that Gammel had told him of being arrested for armed robbery, saying that he (Gammel) couldn't be identified because he had been wearing sun glasses and a hat and the lower part of his face was covered, but that he had gone in the store first and come back out and thereafter he and his friend had gone back to the store and robbed the place.

Appellant Gammel argues that this confession was obtained by the police by trickery and deceit, contending that Skaggs was placed in the cell where Gammel was incarcerated for the express purpose of eliciting a confession and that the statements attributed to Gammel were made without the warnings as to his constitutional rights required

---

[1] The California court pointed out that, if a murder occurred during a robbery, the unarmed bandit could not be absolved, but as an aider of the actual murderer would be equally guilty and equally liable to imposition of the extreme penalty. This is also the law in Arkansas. *Dorsey* v. *State,* 219 Ark. 101, 240 S.W. 2d 30, cert. den. 342 U.S. 851, 72 S. Ct. 80, 96 L. Ed. 642.

by *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, 10 ALR 3d 974 (1966) and its progeny. In advancing this argument Gammel relies solely on circumstances disclosed by Skaggs, the only witness on the subject, and argues that the only reasonable inference to be drawn from these circumstances is that the alleged confession was involuntary because of the trickery and deceit involved. We do not agree.

Gammel moved in limine to suppress the statements. Skaggs testified in camera, substantially as follows:

He had served 10 or 11 days of his sentence at the time he was placed in the same two-man cell with Gammel, about 12 M on May 9, 1974. About an hour thereafter, when the two were alone in the cell, he started asking Gammel why Gammel was in jail and Gammel started in talking about it and made the incriminating statements; Skaggs had no conversation with any of the police officers before he was put in the cell; he asked Gammel "what he was in for" because that is a usual discussion when someone is brought into the jail; none of the police officers suggested that he talk to Gammel or ask Gammel what he had done; and none of them promised anything for his obtaining a statement from Gammel. Skaggs was not a trusty when he was placed in the cell with Gammel, but was made one that afternoon and allowed to go home the next morning; Skaggs had previously been kept in the "bull pen;" he never slept in the cell with Gammel, but was removed from it and returned to the "bull pen" on the same afternoon he had been placed there; he did not try to make a deal with the police in return for the information he gave them, but decided to tell them because Gammel had suggested to Skaggs that, whenever Skaggs became a trusty, he bring Gammel a hacksaw blade; Skaggs had previously been convicted of petit larceny, disorderly conduct, and possession of alcohol as a minor.

We make an independent determination of voluntariness of a confession based upon the totality of the circumstances, but do not overturn the finding of the trial court on the subject, unless it is clearly against the preponderance of the

evidence. *Degler* v. *State*, 257 Ark. 388, 517 S.W. 2d 515. When we consider that none of the testimony of Skaggs is contradicted in any way by anyone and that his testimony cannot be said to be inherently improbable or demonstrably incredible, we cannot say that the finding that Gammel's statements were not voluntary was clearly against the preponderance of the evidence. Gammel's argument that the very fact that Skaggs was made a trusty on the next day and released before the following nightfall can lead to no conclusion except that Skaggs was an agent of the police department placed in the cell to obtain a confession is fallacious. It is at least as likely that Skaggs was brought as he said, to report the conversation when he reflected upon the request that he bring hacksaw blades to Gammel and the potential consequences to him if indeed Gammel subsequently obtained hacksaw blades from some source. Gammel did not avail himself of the opportunity to testify in camera and deny the making of this proposal or to explain how it came to be made, but freely suggests here that Skaggs could not have testified as he did if he did not know that he was about to be made a trusty. It is certainly logical to assume that the officers were pleased to have all the information they received from Skaggs and that they would favor him if possible to do so, perhaps more readily if Skaggs voluntarily gave the information. We cannot help noting that there was evidence of Gammel's participation in the crime, other than the confession, upon which a finding of guilt might have been based. It is likely that the police officers in charge of the investigation were well aware of this before Skaggs was placed in the cell.

We do not agree with Gammel's contention that the state could not meet its burden of overcoming the presumption that the "in-custody" confession was involuntary without calling the jail or police officers to explain why Skaggs, a misdemeanant, was put in the cell with a suspected felon and why Skaggs was released on the following day with one half his sentence unserved or explaining its failure to do so. In advancing this argument, Gammel relies upon *Smith* v. *State*, 256 Ark. 67, 505 S.W. 2d 504, but we do not find the situation comparable to that in *Smith*. We have held "that whenever the accused offers testimony that his confession was induced by violence, threats, coercion, or offering of reward,

the burden is upon the state to produce all material witnesses who were connected with the controverted confession or give adequate explanation for the absence." *Smith* v. *State*, 254 Ark. 538, 494 S.W. 2d 489. But in *Smith* (254 Ark.) it was clearly established that the holding was based upon the necessity that evidence be introduced to refute testimony of the accused or of witnesses that there had been official inducements by way of coercion, physical abuse, fear, threats, promises of reward, leniency or assistance in order to discharge its burden, because otherwise the evidence supporting the involuntariness of a controverted confession stands uncontradicted. See also, *Russey* v. *State*, 257 Ark. 570, 519 S.W. 2d 751.

We have not extended the holding of *Smith* (254 Ark.) beyond its specific language. We see no reason to do so. Here, there was no testimony to refute, so the rule of the *Smith* cases is inapplicable.

THE COURT ERRED BY NOT ORDERING A MISTRIAL AFTER IT ALLOWED A WITNESS FOR THE STATE TO TESTIFY WHAT ONE DEFENDANT SAID ABOUT ANOTHER DEFENDANT, AFTER THE COURT SPECIFICALLY INSTRUCTED THE WITNESS THAT TO SO TESTIFY WOULD BE GROUNDS FOR A MISTRIAL.

After ruling in camera that the statements of Gammel to Skaggs were volunteered and, in part, of a spontaneous nature, the circuit judge added that Skaggs would be permitted to testify only as to his conversation with Gammel but not with regard to any codefendant or other parties. The judge then instructed the witness that he could not testify about anything Gammel had to say about the codefendant or any other party and not about anything Gammel may have said about a negro male helping Gammel, or any statement he may have made about some other party helping. The judge warned Skaggs that any such testimony would be ground for a mistrial. When the witness was asked, while testifying before the jury, what Gammel had told him, Skaggs answered, "He told me that he robbed the Nic-Nac, him and some other guy—." Before the answer was completed,

Spann's attorney interjected an objection which was overruled. The witness then stated that Gammel said that he (Gammel) "went in first and he came back out and they both went in and they robbed the place." Spann's attorney again objected and his motion for a mistrial was denied.

We find no error. Skaggs did not identify Spann in any way or even mention that Gammel had described the "other guy" as a negro male. This did not constitute the kind of cross-implicating confession condemned by *Bruton* v. *United States*, 391 U.S. 123, 88 S. Ct. 1620, 20 L. Ed. 2d 476. We have said that deletion of offending portions of a defendant's statement referring to a codefendant would meet the *Bruton* test, if it could be done without prejudice to the codefendant. *Byrd* v. *State*, 251 Ark. 149, 471 S.W. 2d 350; *Mosby* v. *State*, 246 Ark. 963, 440 S.W. 2d 230. Deletion of references to the codefendant is sufficient. *Miller* v. *State*, 250 Ark. 199, 464 S.W. 2d 594. See also, *Bailey* v. *U.S.*, 410 F. 2d 1209 (10 Cir., 1969), cert. den. 396 U.S. 933, 90 S. Ct. 276, 24 L. Ed. 2d 232. We find sufficient compliance with the *Bruton* rule.

Since Spann did not request that the trial judge admonish the jury relative to the testimony about "some other guy", he is in no position to argue his complaint on appeal based on the judge's failure to do so. Such an instruction would likely have tended to emphasize an otherwise innocuous statement. But more importantly, we find no reversible error because Gammel did testify and did deny making the statement and Spann was thereby afforded the opportunity for cross-examination. This takes the case outside the ambit of *Bruton*. *Nelson* v. *O'Neil*, 402 U.S. 622, 91 S. Ct. 1723, 29 L. Ed. 2d 222 (1971); *Jackson* v. *State*, 253 Ark. 1116, 491 S.W. 2d 581.

THE TRIAL COURT ERRED DENYING DEFENDANTS MOTIONS FOR A MISTRIAL, AFTER THE COURT ALLOWED THE PROSECUTING ATTORNEY TO ASK QUESTIONS OF DEFENSE WITNESS, THE SOLE PURPOSE OF THESE QUESTIONS BEING TO SHOW TO THE JURY THAT DEFENDANTS HAD CRIMINAL RECORDS OR WERE SOMEHOW

INVOLVED IN CRIMINAL ACTIVITY.

Delores Johnson was called by Spann in support of his alibi defense. On direct examination she had testified that Spann had arrived at her house at 9:00 P.M. on May 8, 1974, and spent the entire night there, except for an absence of about 20 minutes' duration after midnight. The robbery occurred about 11:00 P.M. on May 8, 1974. Her credibility and the weight to be given her testimony were important to the ultimate result of his trial. On cross-examination, the prosecuting attorney attempted to cast doubt upon the plausibility of her testimony. In the course of this examination, he asked the witness where Spann lived. Before she answered, appellants' attorneys sought to have her answer limited to the street address and specifically asked that no reference to its being a "Half-Way House," "Transition House" or "that type of place" be permitted. The circuit judge ruled that the witness would not be permitted to testify about prior convictions, charges or court appearances, but would be permitted to state where Spann lived. After she answered that he lived "on Peabody" at an address unknown to her, the prosecuting attorney asked her what type of place it was. Before the question was answered, appellants objected and moved for a mistrial. The objection was sustained, but the motion was denied. The prosecuting attorney then asked whether Spann was required to check in and be present at this place every night. The court sustained an objection, but denied a motion for mistrial. The motion for mistrial was renewed and denied in chambers.

Although the correctness of the trial court's ruling on the objections is not before us, appellants do assert that the questions were intended to appeal to the jury's prejudice against the accused, and argue that the prosecuting attorney was attempting by "sleazy tactics" to "sneak in a cheap shot at defendants" in an effort to prejudice the jury against them by introducing evidence of past crimes, and thus compelled appellants to testify. These charges are wholly unwarranted, and the record is so devoid of support for them that the propriety of stating them is questionable, to say the least.

Declaring a mistrial is an extreme remedy which should

be granted only where there has been an error so prejudicial that justice could not be served by continuation of the trial. *Hill* v. *State*, 255 Ark. 720, 502 S.W. 2d 649. It should not be granted when any possible prejudice could be removed by an admonition to the jury. *Russey* v. *State*, 257 Ark. 570, 519 S.W. 2d 751. It was certainly not called for in this case. Appellants did not seek an admonition to the jury to disregard the questions or any of their implications. The witness never testified on the subject and the prosecuting attorney's questions were not so suggestive that the place where Spann was living was a residence for persons convicted of crimes as to require the drastic remedy appellants sought.

As a matter of fact, Spann later testified that one did not have to be a convicted felon to live at the place he lived on Peabody Avenue in Memphis and that there were people living there who were not convicted felons. Gammel testified that it was a place where people stay until they get "their financial situation straight and back on their feet." He denied, on cross-examination, that he was living there and awaiting discharge back into society on parole because of a conviction on January 24, 1974. Furthermore, Bob Walsh, Executive Director of Transitional, Inc. at 1242 Peabody, the address at which both Spann and Gammel lived on May 8, 1974, was called as a witness by the state and testified that his records showed that Spann did return to the place at 12:45 A.M. on May 9. The testimony of Spann and Gammel about their residence at the place and its character was not contradicted on either direct or cross-examination of Walsh.

Since we find no reversible error, the judgment is affirmed.