David STONE *v.* STATE of Arkansas

CA CR 92-1429                                  863 S.W.2d 319

Court of Appeals of Arkansas
Division II
Opinion delivered October 27, 1993

*Joe Kelly Hardin*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Brad Newman*, Asst. Att'y Gen., for appellee.

MELVIN MAYFIELD, Judge. David Marshall Stone was convicted by a jury of theft of property and sentenced to seven years in the Arkansas Department of Correction. His only argument on appeal is that it was error for the trial court to allow admission of statements he made after being promised leniency by the arresting officer.

The record contains no motion to suppress the statements. Nevertheless, the trial judge held an in camera hearing on the admissibility of the statements. Detective Morris Pate, of the Eureka Springs Police Department, testified that on September 20, 1991, he took a statement from appellant. He said he advised appellant of his Miranda rights by reading him the Miranda warning form, and appellant placed his initials beside each right

to indicate he understood it. Appellant also signed the form in two places to signify that he both understood his Miranda rights and waived the right to remain silent and to have an attorney present during questioning. The form signed by appellant also states, "No promises or threats have been made to me and no pressure or coercion of any kind has been used against me." The signed rights form, an audio tape of the interview, and a transcript of the tape were introduced into evidence at this hearing.

On cross-examination Detective Pate said that Officer Sam Parker had arrested appellant and that Pate had no way of knowing whether Officer Parker had promised appellant anything for his confession, but Pate had not. Pate also admitted that he had not inquired whether appellant was under the influence of drugs or alcohol and that it was not customary for him to do so.

Charles Carty, a detective with the Benton police department, testified that he picked up appellant at the Carroll County Sheriff's office in Berryville and transported him to the Benton Police Department. He said he read appellant his rights when he first came in contact with appellant at approximately 5:16 p.m. on September 20, 1991, and that appellant initialed and signed the form. A copy of this form, the audio tape of the statement appellant made in the car on the way back from Berryville, and a transcript of that statement were also introduced into evidence at the hearing. In his statements appellant admitted stealing a car from Lander's Auto Sales in Benton.

At the beginning of the second statement, appellant was asked if he had been advised of his Miranda rights, if he understood his rights, and if he had a problem with making a statement. Appellant answered that he understood his rights and wanted to make a statement. He was then asked, "Okay, there's no threats or promises made to you?" Appellant answered, "No."

Officer Carty testified on cross-examination that he had not made any promises to appellant and that appellant had specifically denied that he was under the influence of alcohol or drugs before the second statement was made.

The appellant testified that he was arrested in Eureka Springs by Officer Parker at approximately 5:30 a.m. on September 20, and taken to the Carroll County Detention Facility.

Defense counsel then asked appellant,

Q. Did you agree to give them a statement?

A. Officer Parker, as we were standing outside the hotel, told me that it would be in my best interest and that the prosecutor, whomever, would go easier on me if I went ahead and told the truth up front and that's what I did.

Q. So you gave this statement on condition or for being treated leniently?

A. Yes.

Q. And that's what the officer told you would happen?

A. That's word for word what he told me.

Q. And that's the reason you gave the statement?

A. Yes.

On cross-examination appellant admitted signing Exhibits 1 & 3, the Miranda rights forms, and testified that he understood his rights but made the statements anyway. He also testified that neither Detective Pate nor Detective Carty made him any promises. He said:

I voluntarily gave him [Detective Carty] a statement, remembering what Mr. Parker had said and that was very simple, that if I came up front and told them the truth, that he would do what, not he would, but that the system would be lenient with me.

To the trial judge's inquiry, "Where is Officer Parker?" the prosecutor replied, "He's the one that was subpoenaed, Your Honor." Defense counsel added, "He's no longer with the Eureka Springs Police Department. He was fired." The prosecutor then stated, "He's unemployed and lives in Springdale." The trial judge then informed counsel that when there is an allegation of coercion everyone who is a witness to the statement must be present to testify but that Officer Parker had not been a *witness* to either statement that was introduced into evidence. The judge concluded that the statements were voluntary and that Officer Parker made no promises to appellant which would supersede the waiver of his rights as evidenced by his signature on the Miranda

forms.

■ An in-custody confession is presumed to be involuntary and the burden is on the State to show that the statement was voluntarily made. *Smith* v. *State*, 254 Ark. 538, 494 S.W.2d 489 (1973). In determining whether a statement was voluntarily and freely given, we make an independent review of the totality of the circumstances and will reverse only if the trial court's findings are clearly against the preponderance of the evidence, and conflicts in testimony are for the trial court to resolve as it is in a superior position to determine the credibility of witnesses. *Addison* v. *State* 298 Ark. 1, 765 S.W.2d 566 (1989). Whether a confession was made pursuant to a promise of leniency is an issue which, over the years, the Arkansas appellate courts have had to decide on a case-by-case basis. *Davis* v. *State*, 275 Ark. 264, 630 S.W.2d 1 (1982).

■ In *Addison, supra,* the Arkansas Supreme Court explained:

> Pursuant to the "totality of the circumstances" approach, we focus on two basic components: the conduct of the police and the vulnerability of the accused. Some of the factors that we consider in making the determination of whether a confession was voluntary include the youth or age of the accused, lack of education, low intelligence, lack of advice as to constitutional rights, length of detention, repeated and prolonged questioning, and use of physical punishment.

298 Ark. at 6, 765 S.W.2d at 568 (citations omitted.) Some police promises of reward are so clearly false that it is not necessary to consider the vulnerability of the accused in determining whether the confession was involuntary. *Hamm* v. *State*, 296 Ark. 385, 757 S.W.2d 932 (1988). In *Freeman* v. *State*, 258 Ark. 617, 527 S.W.2d 909 (1975), the prosecutor had told a defendant that a confession "would not result in more than 21 years incarceration." The sentence was life. In *Teas* v. *State*, 266 Ark. 572, 587 S.W.2d 28 (1979), the defendant had been promised a recommendation of leniency and perhaps even dismissal of the charge, but he was given the maximum sentence. In *Hamm*, the court described the promises in *Freeman* and *Teas* as prosecutorial misconduct.

On the other hand, by focusing on the vulnerability of the accused, the court has found no false promise of reward in such statements as, "it would probably help if you go ahead and tell the truth," (*Harvey* v. *State*, 272 Ark. 19, 611 S.W.2d 762 (1981)); and "things would go easier if you told the truth," (*Wright* v. *State*, 267 Ark. 264, 590 S.W.2d 15 (1979)). But the appellate court did find false promises of reward in the statements, "I'll help you any way I can," (*Tatum* v. *State*, 266 Ark. 506, 585 S.W.2d 975 (1979)); and, "I'll help all that I can," (*Shelton* v. *State*, 251 Ark. 890, 475 S.W.2d 538 (1972)).

In the instant case there is no evidence of appellant's age or education in the abstract of the hearing but it is obvious from the rights forms introduced into evidence that appellant can read and write his name and his testimony is, as a whole, grammatically correct. He testified that he first made a statement to Officer Parker in the patrol car after Parker had advised him to tell the truth. Appellant then made two additional tape recorded statements in which he admitted stealing the car. There is evidence in the trial transcript that appellant was 29 years old and was a manager trainee at Roadrunner.

■ Another consideration also comes into play in the instant case, and that is the fact that Officer Parker did not testify. In *Smith* v. *State*, 254 Ark. 538, 494 S.W.2d 489 (1973), the Arkansas Supreme Court adopted the rule that whenever an accused offers testimony that his confession was induced by violence, threats, coercion or offers of reward, then the State has a burden to produce all material witnesses who were connected with the controverted confession or give adequate explanation of their absence. 254 Ark. at 542, 494 S.W.2d at 491. In that case, the two defendants accused one of the interrogating officers of physical abuse and threats during interrogation. The other interrogating officer testified that no threats, coercion, intimidation, or promises of leniency were made. The conviction was reversed because the State failed to call the officer appellants had accused and the stenographer who took appellants' statements in shorthand. The court held these were material witnesses.

■ In another case, *Smith* v. *State*, 256 Ark. 67, 505 S.W.2d 504 (1974), the defendant had accused both interrogating officers of physically abusing him. One of the officers denied

the accusations, and the other officer did not testify. This conviction was reversed. The court said:

> We have never held, and we do not now hold, that the state must call every witness who had any connection, however remote and inconsequential, with the giving of an in-custody statement. When that participation is significant, however, and the witness would be a "material" one, the rule of *Smith* v. *State*, 254 Ark. 538, 494 S.W.2d 489, stands undiluted.

256 Ark. at 72, 505 S.W.2d at 508. *See also, Northern* v. *State*, 257 Ark. 549, 518 S.W.2d 482 (1975), reversed and remanded because the alleged abusing officer was absent; *but see, Gammel & Spann* v. *State*, 259 Ark. 96, 531 S.W.2d 474 (1976), in which the State had failed to call a witness who was in jail with the defendant and might have shed some light on the defendant's argument that his statement was involuntary. The court in *Gammel and Spann* refused to extend the *Smith* v. *State*, 254 Ark. 538, 494 S.W.2d 489 (1973), decision beyond its specific language. 259 Ark. at 103, 531 S.W.2d at 479.

In the instant case the arresting officer, who allegedly made the promise of leniency to appellant, was apparently subpoenaed but failed to appear for the trial. The only explanation given was that he had been fired, was unemployed and living in Springdale. The trial judge held that the appellant's testimony that he had been advised of his Miranda rights, understood them, and had voluntarily signed the waiver of those rights and made his confession, adequately outweighed the failure of the arresting officer to testify. Moreover, the trial judge noted that the arresting officer had not been a witness to either of the two statements of the appellant that were introduced into evidence.

■■ Appellee treats appellant's argument as asserting that because his testimony of a promise of leniency by Parker was uncontradicted, the trial judge was required to believe it. If this is what appellant is arguing, his premise is incorrect. The trier of fact is not required to accept the uncontradicted testimony of the defendant as truth. The defendant is the person most interested in the outcome of the trial. *Zones* v. *State*, 287 Ark. 483, 702 S.W.2d 1 (1985). The trier of fact has the right to accept that part of the defendant's testimony it believes to be true and to reject

that part it believes to be false. *Thomas* v. *State*, 266 Ark. 162, 583 S.W.2d 32 (1979). Based on all the circumstances discussed above, we affirm.

Affirmed.

JENNINGS, C.J. and ROGERS, J., agree.